## NATIONAL MOVING & WAREHOUSE CORPORATION v. INTERSTATE COMMERCE COMMISSION et al.

District Court, S. D. New York.

Dec. 2, 1942.

Nathan E. Zelby, of New York City, for plaintiff.

Robert L. Pierce, Sp. Asst. to Atty. Gen., and J. Stanley Payne, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C. (Thurman Arnold, Asst. Atty. Gen., Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., and Mathias F. Correa, U. S. Atty., of New York City, of counsel), for defendants.

Before SWAN, Circuit Judge, and COXE and CONGER, District Judges.

SWAN, Circuit Judge.

The plaintiff, National Moving & Warehouse Corporation, a New York corporation, is engaged in the common carriage of household goods by motor vehicles moving in interstate commerce. On February 10, 1936, the plaintiff applied [1] to the Interstate Commerce Commission for a certificate of public convenience and necessity under the so-called "grandfather clause" of the Motor Carrier Act, 49 U.S.C.A. § 306(a). A hearing was duly held before a Commission examiner at which the applicant and certain protestants appeared. Testimony and documentary exhibits were received in evidence, and a report and recommended

---

[1] The application was filed by National Movers of New York, Inc. but during the course of the proceedings, with the approval of the Commission, the original applicant was succeeded by A. Andre & Son, Inc. and the latter was in turn succeeded by the plaintiff. As nothing turns upon the substitutions, we shall speak in this opinion of the plaintiff as the applicant.

order were prepared by the examiner and submitted to the parties and to the Commission. On February 24, 1942, the Commission issued its report and order, granting the plaintiff authority for "radial" operation in the transportation of household goods to and from a described base area within the states of New York and New Jersey, on the one hand, and 29 states and the District of Columbia, on the other hand, but denying the application in so far at it sought "non-radial" operating authority.[2] Petitions for rehearing and reconsideration were denied by the Commission and its order became effective August 15, 1942. The present action was thereafter brought pursuant to section 207 of the Judicial Code, 28 U.S.C.A. § 41(28). As an interlocutory injunction was sought, a statutory court was convened pursuant to 28 U.S.C.A. § 47. At the time of the hearing the parties submitted the cause for final determination upon the complaint, the answer and the evidence taken by the Commission.

The issue lies within narrow compass. The plaintiff concedes the facts as found by the Commission but insists that in interpreting them and applying the law it acted arbitrarily and capriciously in limiting the authority granted to "irregular route radial" service. The Commission's report made findings (32 M.C.C. p. 546) as follows: "On June 1, 1935, applicant owned three trucks, on February 1, 1936, four trucks, and at the time of hearing, two trucks. Lists of shipments, submitted as exhibits and supported by documentary evidence, show numerous movements of household goods between certain points in New York and New Jersey, in the vicinity of New York, N. Y., on the one hand, and the District of Columbia and points in each of the States named in the application, with the exception of the three States noted below, on the other hand, during the period extending from 1931 to June 1, 1935, and continuously thereafter. Movements were made between these points with reasonable frequency, giving consideration to the great distance between some of the points and the specialized character of the transporta-tion." The report then described the points served in the vicinity of New York City (which we refer to as the "base area"), discussed the insufficiency of the evidence to warrant granting authority for operation in the States of Mississippi, Louisana and Arkansas, and concluded, on pages 548, 549, with the finding that "the applicant was on June 1, 1935, and continuously since has been, engaged in bona fide operation as a common carrier by motor vehicle, in interstate or foreign commerce of household goods" between points in the base area, "on the one hand", and points in 29 enumerated States and the District of Columbia, "on the other, over irregular routes"; "that, by reason of such operation" the plaintiff's predecessor in interest "is entitled to a certificate authorizing continuance thereof; and that in all other respects the application should be denied". The wording of the finding in referring to points in the base area, "on the one hand", and points in the enumerated states, "on the other", clearly indicates denial of a finding of "non-radial" operation. The Commission's order incorporated the report and except to the extent therein granted denied the application.

It cannot be, and is not, disputed that under sections 206(a) and 208(a), 49 U.S.C.A. §§ 306(a), 308(a), the Commission is empowered to grant a carrier operating authority limited to radial service where the evidence so warrants. United States v. Carolina Carriers Corp., 315 U.S. 475, 480, 62 S.Ct. 722, 86 L.Ed. 971. From the exhibits which were before the Commission and are before us it appears that only 9 out of 140 trips listed as made by the applicant's trucks during the period of 17 months between January 1, 1934, and June 1, 1935, were non-radial hauls. They had as their termini but 8 of the 30 states (including the District of Columbia as one of the 30) in which the applicant claims to have been furnishing non-radial service on the "grandfather" date. If the shipments for three years prior to January 1, 1934, be also considered, despite their remoteness in time, only 8, or possibly 9, out of 344 trips are found to be non-radial hauls, and they

---

[2] The Commission's definition of "household goods" appears in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467. The distinction between "radial" and "non-radial" operating authority is explained in Classifi-cation of Brokers and Motor Carriers of Property, 2 M.C.C. 703. The report and order under attack in the present suit may be found in National Movers of New York, Inc., MC–14658, 32 M.C.C. 545.

add but 5 states to the 8 found in the 17 months period following January 1, 1934. Upon so meager a showing as this we cannot hold that the Commission was not warranted on the evidence before it in denying "grandfather" rights throughout the vast territory for which the applicant claimed them—a territory embracing all of the United States east of the Mississippi River and several states west of it. The Act provides the test of "bona fide operation" and that standard carries the connotation of "substantial, as distinguished from incidental, sporadic, or infrequent, service", as the court recognized in United States v. Carolina Carriers Corp., supra, 315 U.S. at pages 480–482, 62 S.Ct. at page 726, 86 L.Ed. 971. The weighing of such evidence involves a function that is peculiarly one for the Commission rather than the courts. See Alton R. Co. v. United States, 315 U.S. 15, 22, 62 S.Ct. 432, 86 L.Ed. 586.

■ It is true, as the plaintiff points out, that the transportation of household goods is by its very nature likely to be occasional and non-repetitive, and particularly so in respect to cross-hauls, that is, non-radial service; and the Commission has been liberal in granting grandfather certificates to motor carriers performing specialized services having such characteristics. Forrest E. Miller, 10 M.C.C. 15 (radial certificate); William J. Wruck, 12 M.C. 150 (radial certificate); Aero Mayflower, 20 M.C.C. 633 (non-radial in part); Security Storage Co., 30 M.C.C. 37 (non-radial). In reliance upon these and other decisions of the Commission the plaintiff argues that the number of hauls has never been used as a measuring rod in the case of carriers of household goods, and that proof by an applicant of a holding out of its readiness to serve within a territory, plus actual operations to some points therein, has been recognized as sufficient to warrant granting of a non-radial certificate. Hence it is strenuously urged that the granting of a more limited certificate to the plaintiff was an arbitrary and capricious departure from the standard adopted by the Commission in similar cases. The argument does not convince us. It is clear that a mere holding out will not alone suffice. Alton R. Co. v. United States, supra, 315 U.S. at page 25, 62 S.Ct. 432, 86 L.Ed. 586. Determination of the scope of the holding out and weighing of the substantiality of the applicant's operations are primarily for the Commission; its judgment is entitled to respect. Obviously in none of the cases where non-radial authority has been granted could the facts be identical with those submitted on the plaintiff's application. How limited is a court's power of review is indicated by the opinion in Virginian Ry. Co. v. United States, 272 U.S. 658, at page 663, 47 S.Ct. 222, at page 224, 71 L.Ed. 463, where Mr. Justice Brandeis remarked that it was beyond the province of the court "to consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases." This was said in a rate case, but the restrictions are equally applicable to a case arising under the Motor Carrier Act. United States v. Carolina Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586; see also Inland Motor Freight v. United States, D.C.D.Idaho, 36 F.Supp. 885, 887, and the authorities there cited. We are not persuaded that the order under review was arbitrary, capricious or unsupported by the evidence. Accordingly the complaint is dismissed.