GONCZ v. INTERSTATE COMMERCE COMMISSION et al.

Civil Action No. 2110.

District Court, D. Massachusetts.

Dec. 22, 1942.

Max S. Ficksman, of Boston, Mass., and Nathan E. Zelby, of New York City, for plaintiff.

Thurman Arnold, Asst. Atty. Gen., Edmund J. Brandon, U. S. Atty., of Boston, Mass., Edward Dumbauld, Sp. Asst. to Atty. Gen., for the United States.

Daniel W. Knowlton, Chief Counsel, E. M. Reidy, Asst. Chief Counsel, both of Washington, D. C., for Interstate Commerce Commission.

Before MAGRUDER, Circuit Judge, FORD and WYZANSKI, District Judges.

MAGRUDER, Circuit Judge.

Jurisdiction of this court is invoked under 28 U.S.C.A. § 41(28) and §§ 43–48 in an action to enjoin the enforcement of and set aside an order of the Interstate Commerce Commission issued January 22, 1942.

The plaintiff is a common carrier by motor vehicle of household goods in interstate commerce. By Common Carrier Application No. M.C. 78344, filed February 12, 1936, plaintiff sought a certificate of public convenience and necessity under § 206(a) of the Motor Carrier Act, now Part II of the Interstate Commerce Act, 49 U. S.C.A. § 306(a)—the so-called "grandfather clause." In the application, plaintiff asked for authority to conduct irregular route non-radial operations as such common carrier between points in Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin and the District of Columbia. At a hearing before a Commission examiner, at which certain protestants appeared, the plaintiff

and his wife testified, and various documentary exhibits were offered in evidence. On January 22, 1942, Division 5 of the Commission issued its report, overruling plaintiff's exceptions to the examiner's report; finding that applicant was on June 1, 1935, and continuously since has been, in bona fide operation as an interstate common carrier of household goods by motor vehicle, between points in Essex, Middlesex, Plymouth, Norfolk and Suffolk counties, Massachusetts, on the one hand, and points in the above-named states, and the District of Columbia, on the other, over irregular routes; finding that applicant is entitled to a certificate authorizing continuance of such operations; and further finding that in all other respects the application should be denied. On the same day, the Division issued the order now under review, reciting that plaintiff's application, except to the extent granted in the said report, is denied, effective March 13, 1942. The effective date was later postponed to August 15, 1942. The full Commission on July 6, 1942, denied plaintiff's petition for rehearing and reconsideration.

The plaintiff is thus restricted by the Commission's order to so-called radial operations on irregular routes.[1] He may transport household goods from any point in his Massachusetts base area to any point in the described territory, and from any point in the described territory back to the Massachusetts base area. Thus, for example, he could carry a shipment from Boston to Jacksonville, Florida. On the way back he could pick up a load anywhere he might find one in the territory described—Jacksonville, if he were lucky, or Charleston, South Carolina, or St. Louis, Missouri—provided such load were destined for a point in the Massachusetts base area. But if on arrival at Jacksonville he learned of a load at St. Louis to be carried to Boston, he could not, in proceeding to St. Louis to pick it up, carry a shipment from Jacksonville to be delivered in St. Louis. Nor could he, proceeding on a direct route back from Jacksonville to Boston, pick up a shipment for delivery at a way point, say, Washington or Philadelphia.

At the hearing before us on October 22, 1942, the plaintiff withdrew his application for an interlocutory injunction, and the case was submitted for final determination on the testimony and exhibits which constituted the evidence before the Commission and upon which its report and order of January 22, 1942, were based. Subsequently the parties submitted briefs.

On June 1, 1935, plaintiff operated with a total of two trucks. Most of his interstate shipments originated in and around Boston. At that time he maintained an office in Boston, but had no office or terminal at any other place. At the date of the hearing before the Commission he had exchange arrangements in half a dozen cities with local truckers, who obtained business for him. The exhibits disclose a large number of radial operations and comparatively few non-radial operations prior to June 1, 1935. There are listed 248 representative shipments, more or less, handled during the seventeen months prior to that date. Out of these 248 shipments only 19 were non-radial movements. All of these 19 shipments had either their point of origin or destination somewhere in one of the New England states, New York or New Jersey. All but 5 had both their points of origin and destination in this group of states. During the remaining seven months of 1935, the lists show that 9 out of 88 shipments were non-radial operations. Lists of shipments during 1939 indicate that the proportion of non-radial operations has been maintained or slightly increased.

"As the Motor Carrier Act is remedial, and the grandfather clause confers a special privilege, the proviso defining exemptions is to be held to extend only to carriers plainly within its terms." Gregg Cartage & Storage Co. v. United States, 1942, 316 U.S. 74, 83, 62 S.Ct. 932, 936, 86 L.Ed. 1283.

Section 206(a), 49 U.S.C.A. § 306 (a), provides that "if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, * * *." The test of "bona fide operation" carries the connotation of "substantial, as distinguished from

---

[1] See Classification of Brokers and Motor Carriers of Property, 2 M.C.C. 703, for definitions of "radial" and "non-radial" operations over irregular routes.

incidental, sporadic, or infrequent, service." United States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971. The Commission's responsibility to bring greater order and stability to our national transportation system is an additional reason for "insistence upon a showing of substantial service in that territory which is sought to be covered by a certificate under the 'grandfather clause.'" United States v. Carolina Freight Carriers Corp., supra, 315 U.S. at page 481, 62 S.Ct. at page 726, 86 L.Ed. 971. As the Commission points òut in its brief, if the plaintiff is entitled to non-radial authority based upon its showing here of sporadic non-radial shipments, it is likely that there would be numerous other small movers entitled to the same authority to move hither and yon over this vast territory, making it difficult for legitimate non-radial operators to serve that territory adequately.

■ It was primarily a matter for the expert judgment of the Commission, taking into account the characteristics of the highly specialized transportation service here involved, to determine whether the volume of cross-haul shipments was substantial enough to warrant a finding of bona fide operation in non-radial or cross-haul service prior to June 1, 1935. On the evidence we cannot say that the Commission's order was arbitrary or capricious or patently erroneous.

■ As was pointed out in Alton R. R. v. United States, 1942, 315 U.S. 15, 22, 62 S.Ct. 432, 86 L.Ed. 586, and again in United States v. Carolina Freight Carriers Corp., supra, 315 U.S. at page 481, 62 S. Ct. at page 726, 86 L.Ed. 971, the purpose of the "grandfather clause" was to assure those to whom Congress had extended its benefits a "substantial parity between future operations and prior bona fide operations." What the plaintiff sought here was authority to transport household goods in interstate commerce to and from any and all points within the territory described. This would have given him an extremely valuable franchise under which he might establish terminals in scores of cities and operate a fleet of trucks, after the manner of tramp steamers, crisscrossing an area embracing about one-third of continental United States. The Commission was free to conclude that such operations would not be on a "substantial parity" with the limited operations which he was conducting prior to the "grandfather" date. As we have previously indicated, plaintiff's proven cross-haul operations were quite localized, relatively infrequent, and apparently incidental to his carriage of household goods from the five Massachusetts counties which constituted his base of operations. Plaintiff may of course apply to the Commission for the broader non-radial authority desired; such application will not be granted automatically, as under the "grandfather clause," but will have to meet the requirements of § 207(a), 49 U.S.C.A. § 307(a).

■ Section 208(a), 49 U.S.C.A. § 308 (a), provides that certificates issued by the Commission "shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate." There is no doubt that under this section the Commission may, in proper cases, limit the operations of an irregular route carrier to radial service. United States v. Carolina Freight Carriers Corp., supra, 315 U.S. at page 480, 62 S.Ct. 722, 86 L.Ed. 971; National Moving & Warehouse Corp. v. Interstate Commerce Commission, D. C.S.D.New York, December 2, 1942, 48 F.Supp. 284. The last cited case is much like the case at bar on the facts, and is a square authority for the conclusion we have reached. The opinion in that case fully answers one of the arguments addressed to us, namely, that the denial of authority to the plaintiff to conduct non-radial operations is an arbitrary departure from the standards applied by the Commission in similar cases.

At the hearing before us counsel for the plaintiff suggested that the evidence as to the 19 non-radial shipments was meant to be "merely representative" of this type of service, which was all the plaintiff thought needed to be shown to entitle him to a non-radial certificate. As to this, we take note of the assurance in the Commission's brief that if the plaintiff feels he was acting under a misapprehension in not introducing all the available evidence with respect to non-radial opera-

tions, and has in fact such additional evidence, and will present to the Commission a petition for such purpose complying with the Commission's rules of practice, such application will have the careful consideration of the Commission.[2]

For the reasons above indicated, the complaint is dismissed.

[2] The Commission's brief further states: "The Commission well recognizes that in subjecting to regulation for the first time motor carriers, some of whom are small operators, such operators may have misconceived their rights, in which event the Commission, if properly appealed to in conformity with its rules, is always glad to get at the true facts, and its policy in this respect is extremely liberal. If such a petition is filed, plaintiff can rest on the long and honored history of the Commission that it will receive careful and sympathetic consideration."