**INTERSTATE COMMERCE COMMISSION
v. SOUTHWEST FREIGHT LINES, Inc.**

No. 5472.

United States District Court
W. D. Missouri, W. D.
Oct. 15, 1949.

James A. Murray, Gregory U. Harmon, Hugh E. Lillie, Kansas City, Mo., for plaintiff.

Oscar S. Brewer, Kansas City, Mo., Clarence D. Todd, J., Washington D.C., for defendant.

Walter V. Huston, Kansas City, Mo., for Knaus Truck Lines, Inc., amicus curiae.

Lee Reeder, Kansas City, Mo., for Mid-States Freight Lines, amicus curiae.

RIDGE, District Judge.

As a common carrier by motor vehicle, defendant, Southwest Freight Lines, Inc., has "regular route" and "irregular route radial service" authority, to transport in interstate commerce general commodities between certain points and places specified in a certificate of convenience and necessity, duly issued to it by the Interstate Commerce Commission.

The contention is here made that defendant is violating the authority so granted to it. Injunction is sought to compel defendant to desist from further violation thereof. The Court has jurisdiction to issue an injunction as prayed, if defendant is found to be operating as a motor carrier in violation of any of the terms or conditions of the authority granted to it in its certificate. 49 U.S.C.A. § 322(b).

Defendant's authority to operate as a motor carrier, so far as here pertinent, is stated in the certificate, as follows:

"Regular Routes:

"(A)

"*General commodities,* except those of unusual value, and except dangerous explosives, household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, commodities in bulk, commodities requiring special equipment, and those injurious or contaminating to other lading,

"Between East St. Louis, Ill., and Kansas City, Kans.:

"From East St. Louis over U. S. Highway 40 to St. Louis, Mo., thence over Alternate U. S. Highway 40 to St. Charles, Mo., thence over Bypass U. S. Highway 40 to Wentzville, Mo., and thence over U. S. Highway 40 to Kansas City, and return over the same route.

"Service is authorized to and from all intermediate points and the off-route points of New Florence, Rocheport, Blackwater Junction, Sweet Springs, Concordia, Odessa, and Bates City, Mo.

"Between East St. Louis, Ill., and St. Joseph, Mo.:

"From East St. Louis to Wentzville, Mo., as specified above, thence over U. S. Highway 61 to Hannibal, Mo., thence over U. S. Highway 36 to St. Joseph, and return over the same route.

"Service is authorized to and from all intermediate points except those between Wentzville and Hannibal, Mo.

"Between points and places in Missouri, as follows:

"From Trenton over U. S. Highway 65 to Sedalia.

"From Laclede over Missouri Highway 5 to Unionville.

"From Jefferson City over U. S. Highway 63 to Macon.

"From Jefferson City over U. S. Highway 54 to Mexico, thence over Missouri Highway 22 to junction U. S. Highway 63.

"From junction U. S. Highway 40 and Missouri Highway 240 over Missouri Highway 240 to junction Missouri Highway 3, thence over Missouri Highway 3 to junction U. S. Highway 24.

"From Moberly over U. S. Highway 63 to junction U. S. Highway 24, thence over U. S. Highway 24 to Kansas City.

"From Boonville over Missouri Highway 5 to junction U. S. Highway 24.

"From Miami over Missouri Highway 41 to junction U. S. Highway 40.

"From Glasgow over Missouri Highway 240 to Marshall, thence over Missouri Highway 20 to junction Missouri Highway 13.

"From Lexington over Missouri Highway 13 to junction U. S. Highway 40.

"From Kansas City over U. S. Highway 71 to St. Joseph.

"Return over these routes to the above-specified origin points.

"Service is authorized to and from all intermediate points on the above-specified routes.

"(B)

*General Commodities,* except those of unusual value, and except dangerous explosives, household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, commodities in bulk, and those requiring special equipment,

"Between Sedalia, Mo., and Windsor, Mo.:

"From Sedalia over U. S. Highway 65 to junction Missouri Highway 52, thence over Missouri Highway 52 to Windsor.

"Between Kansas City, Mo., and Sedalia, Mo., for operating convenience only:

"From Kansas City over U. S. Highway 50 to Sedalia.

"Between Sedalia, Mo., and Jefferson City, Mo., for operating convenience only:

"From Sedalia over U. S. Highway 50 to Jefferson City.

"Between Sedalia, Mo., and St. Louis, Mo., for operating convenience only:

"From Sedalia over U. S. Highway 50 to St. Louis.

"Return over these routes.

"Service is not authorized to or from intermediate points on the above-described routes.

Irregular Routes:

*"General commodities,* with exceptions as specified in (A) above, in truckload lots,

"Between points and places on the routes specified in (A) above, on the one hand, and, on the other, points and places in Iowa, Illinois, Arkansas, Oklahoma, and Kansas."

Eleven violations of the authority so granted defendant in the above certificates are here charged. Typical of such violations are the operations defendant admits it made in transporting general commodities from (1) Collinsville, Illinois, over irregular routes to St. Louis, Missouri, from St. Louis, Missouri, over U. S. Highway 50 to Sedalia, Missouri, thence from Sedalia, Missouri, over irregular routes to Little Rock, Arkansas; (2) from Springdale, Arkansas, over irregular routes to Kansas City, Missouri, thence from Kansas City, Missouri, over U. S. 40 to St. Louis, Missouri, thence over irregular routes from St. Louis, Missouri, to Chicago, Illinois; (3) from Little Rock, Arkansas, over irregular routes to Sedalia, Missouri, thence over U. S. Highway 50 to St. Louis, Missouri, thence from St. Louis over irregular routes to La Hague, Illinois; and (4) from Russellville, Arkansas, over irregular routes to Sedalia, Missouri, thence over U. S. 65 to junction with U. S. 40 thence from junction over U. S. 40 to St. Louis, Missouri, thence from St. Louis over irregular routes to Chicago, Illinois. The remaining shipments charged as violations follow the same general pattern of operations by defendant in their transportation, as do the above.

The plaintiff's claim that defendant has violated the terms of its certificate of convenience and necessity in handling these shipments is premised on the "irregular routes" authority granted defendant in its certificate. Plaintiff contends that inasmuch as none of the shipments so handled by defendant is shown to have either originated or terminated at any point or place on defendant's regular route authority as delineated in (A) thereof, said shipments constituted "cross-hauling" the irregular route radial service authority. ("Cross-hauling" as hereinafter used, means the transportation by a radial carrier "through" the "base point" of his authority, in distinction of transporting "to" and "from" a base point. The parties here concede that a radial carrier may not transport "through" a base point, and that if defendant is found to be "cross-hauling", an injunction should be granted.) Defendant's claimed right to handle the shipments in question as it did is based on the premise that it has a "regular routes" and "irregular routes radial service" authority, granted to it by the terms of the above certificate; that it may use both such authorities in transporting through shipments from one segment of its radial authority into another segment thereof. These contentions necessitate that we ascertain and define just what authority is granted to defendant in its certificate to operate as a motor carrier in the above respects.

Under Section 204(b) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 304(b), the Interstate Commerce Commission has classified motor carriers of property, as to types of service. See Ex Parte MC-10, decided August 9, 1937, 2 M.C.C. 703, 709. By the classification there made, defendant's regular route authority is established as "regular route non-scheduled service", and, its irregular route authority as "irregular route radial service." As an irregular route radial service carrier, defendant is, as shown in the above certificate, authorized to transport general commodities, with certain exceptions, in truckload lots, between points and places on the routes specified in (A) of its regular route authority, on the one hand, and, on the

other, to points and places in Iowa, Illinois, Arkansas, Oklahoma and Kansas. A delineation of all the places defendant may use on its regular (A) route authority, from and to which it may operate irregular route radial service, is not here necessary. Suffice it to say that they apparently are as numerous as there are cities, towns, villages and farms on such regular routes.

In considering the authority granted to an irregular route radial service carrier, the Interstate Commerce Commission, in G. & M. Motor Transfer Co., Inc., 43 M.C.C. 497, 500, said: "Authority to operate within a specified 'territory' may include permission to service all points in that area. On the other hand, it may be restricted to designated points therein or it may extend to all points in a part of that area and to selected localities in another part. The precise delineation of the area or the specification of localities which may be serviced has been entrusted to us by the Congress. United States v. Carolina Freight Carriers Corp., 315 U.S. 475 [62 S.Ct. 722, 86 L.Ed. 971]. The words 'to' and 'from' in applicant's certificate define the territory in which it may operate. This territory may not be increased by the expedient of interpreting 'to' and 'from' a point to mean also through such point."

In Gay's Express, Inc. v. Hargis and Nichols, 43 M.C.C. 277, the Commission defines the connotation that is meant to be attached to the use of the words "on the one hand" and "on the other hand" in a certificate of a radial service carrier. The Commission there said, 43 M.C.C. at page 279: "The words 'on the one hand' and 'on the other' * * * are words of extremity in both common and legal parlance. They were used * * * for the sole purpose of identifying the operations authorized as radial operations between a base point and other points in a described area, as distinguished from an unlimited nonradial operation between described points or all points within described areas."

In light of the above definitive decisions of the Interstate Commerce Commission interpreting the authority granted to radial service carriers; the classification

of motor carriers as made by the Commission, supra; and, the plural places defendant may use on its regular route (A) authority, from and to which defendant may operate as a radial carrier, we interpret the irregular-routes radial service authority granted to defendant in the above certificate to authorize service to and from a base point, determined to be coterminous with defendant's regular (A) routes authority, on the one hand, and the five States mentioned in the certificate, on the other; that in transportations made pursuant to that authority by defendant each particular irregular routes radial service shipment must either begin or end at a place in the base point area so defined.

By the terms and provisions of the certificate here considered, defendant is granted two regular route authorities, designated (A) and (B). Only the regular route authority delineated under (A) is made a part of the irregular route authority granted to defendant in the certificate. Regular route authority (B) granted defendant, obviously for "operating convenience," is no part of the irregular route authority of defendant, except as points and places therein referred to are included within the designation of defendant's regular route (A). Defendant's regular route (A) authority may be generally defined as having principal terminals at East St. Louis, Illinois, Kansas City, Kansas, St. Joseph and Hannibal, Missouri, connected by U. S. Highways Nos. 40, 36 and 61, serving all intermediate and some specifically designated off-route points, with certain exceptions. Sedalia, Missouri, is an off-route point of defendant's regular (A) route serviced by specific authority to transport from Trenton over U. S. Highway 65 to Sedalia. This perfunctory delineation of defendant's (A) route authority may serve to define the "base point" area of defendant's radial authority.

By virtue of its regular route (A) authority, defendant has interpreted its certificate as permitting it to entertain through shipments originating in one segment of its irregular route radial service authority, transport the same to a "gateway" on its regular route, thence transport over its regular route authority to some other "gateway" thereon, and then make use of another segment of its radial service authority to transport the shipment to point of destination. Defendant's contention amounts to this, that it may make use of both its "regular routes" and "irregular routes" authority to transport a given through shipment from point of origin in one segment of its radial authority to point of destination in another radial segment, without "interchange" or "service" to the "base point" of its radial service authority. When the authority granted defendant in the above certificate is focused in the spotlight of the purpose of Part II of the Interstate Commerce Act, supra; the classification of motor carriers as made by the I. C. C.; and, interpretations made by the I. C. C. of the authority intended to be granted in a certificate of convenience and necessity such as here considered, we are of the opinion that defendant's interpretation of the terms and conditions of its certificate as above indicated, is erroneous, fallacious and an adventure into semantics.

 It is well recognized that the purpose of enactment of Part II of the Interstate Commerce Act "was to promote public service, dependability and efficiency in the field of interstate motor transportation for hire." Byers Transp. Co. v. United States, D.C.W.D.Mo., 49 F.Supp. 828, 829. "Service" to the public by the regulation there established is the major premise behind that legislation and the grant of authority by the I. C. C. in a certificate of convenience and necessity. That is to say, that in the granting of a certificate of convenience and necessity either because of "grandfather" operations or application for specific authority, "service" to a community, area, or to the public at large, is an influential factor, to be considered in the determination of the grant. A regular route nonscheduled service carrier authorized to transport commodities between East St. Louis, Illinois, and Kansas City, Kansas, is under the Motor Carriers Act, Part II, Interstate Commerce Act, supra, supposed to be of, and furnish motor carrier "service" to, each of those places. An irregular route radial service carrier is supposed to

furnish "service" from a fixed "base point" to points or places located within such radial area, and from any point located within the radial area to such carrier's fixed base point or points. Ex Parte No. MC-10, 2 M.C.C. 703. " 'Service', when applied to a point or place in connection with motor-carrier operations, contemplates interchange with connecting carriers at such point or place, as well as the delivery of goods to a consignee or the acceptance of goods for transportation from a shipper at such point or place, and such other details as are incident to the delivery or receiving of the goods." Jack Cole Co., 32 M.C.C. 199, 209. Section 208(a) of the Act, 49 U.S.C.A. § 308(a), provides: "Any certificate issued under Section 206 or 207 shall specify *the service* to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate; * * *." (Emphasis supplied.)

 Under Section 208(a) of the Act, "it is not the function of a certificate to enumerate the operations which may not be performed" by a motor carrier. Gay's Express, Inc. v. Hargis and Nichols, 43 M.C.C. 277, 280. The I. C. C. specifies in a certificate of convenience and necessity "the service which is 'to be rendered' and that is all that defendants are authorized to do." Gay's Express, Inc., supra. Neither in the terms of the Act here considered, the interpretation thereof in decisions of the I. C. C., nor by the provisions and authority granted in the certificate in question, do we find any provision which would authorize defendant to establish "gateways" to and from the base point area which it is supposed to service pursuant to the radial authority granted to defendant. Under the Motor Carriers Act, supra, and the interpretation by the I. C. C. of its prerogative thereunder, the general understanding is, and defendant here affirms, in brief and oral argument, that under a certificate granting irregular route radial operations the holder thereof is not authorized to perform cross-haul operations by transporting between points in a radial territory through base points or routes. Jack Cole Co., Inc., 32 M.C.C. 199; National Moving & Warehouse Corp. v. Interstate Commerce Commission, D.C., 48 F.Supp. 284; Goncz v. Interstate Commerce Commission, D.C., 48 F.Supp. 286; Interstate Commerce Commission v. G. & M. Motor Transfer Co., Inc., D.C., 64 F.Supp. 302; Garford Trucking Co. v. United States, D.C., 64 F.Supp. 780. Consequently, when defendant reads into its certificate authority to pick up a shipment in the radial territory which it is authorized to serve, over irregular routes, and it brings such shipment to one of its "gateway" points, for instance St. Louis, Kansas City, or Sedalia, and transports the shipment from the gateway point over its regular route authority to another gateway point, then from that point over irregular routes to final destination in another segment of its radial authority, it is reading into its certificate an authority, not granted by the terms and provisions thereof, by custom, practice, or generally accepted interpretation of such authority as is granted in said certificate. First of all, because such a reading and contention wholly overlooks the "service" defendant is authorized to perform under its certificate. Second, such a transportation constituted cross-hauling the "base point" authority granted in the certificate. And, third, defendant thereby diffuses the base point of its irregular route authority into several base points not granted in the certificate.

As found above, the "base point" of defendant's irregular route radial authority is the area coterminous with its regular route (A) authority. Defendant may transport from a radial area to any place on its regular route. Under the Act and regulations of the I. C. C., such a transportation must be of "service" as defined by the I. C. C. to the place or points of a shipment. To sustain the contention here made by the defendant would be to wholly ignore "service" of any kind to the points of a shipment carried through a base point which, de-

fendant admits, is cross-hauling not allowed by irregular route authority. To select a "gateway" on its regular route and say that is a base point of its irregular route radial service, and then to interchange with itself as a regular route carrier, partitions the base point area granted defendant in its irregular route radial service and creates a fragmentation thereof at the whim of defendant's routing of shipment operations.

In the certificate of defendant, it is provided: "Any repetition in the statement of authority granted herein shall be construed as conferring only a single operating right." This can only mean that each authority granted in the instant certificate, i. e. regular and irregular routes authority, must be construed and considered as separate and independent grants. When the separate authorities granted defendant in the instant certificate are construed, as above found, it is manifest that there is a repetition and overlapping of the regular route authority with the irregular routes authority granted to defendant, to the full extent of the "base point area" of the latter authority with the whole of the regular routes (A) authority of the former. When that situation is pondered in light of the above mentioned limitation contained in the certificate, it seems clear that when defendant transports a shipment from its authorized radial area to the base point area defined in its certificate, the I. C. C. intended that defendant would exhaust its irregular route radial service authority so far as that shipment was transported under defendant's radial authority. Such is the concept contended for by the I. C. C. in G. & M. Mtr. Transfer Co., 43 M.C.C. 497, and sustained in I. C. C. v. G. & M. Motor Transfer Co., D.C., 64 F.Supp. 302. To interpret the authority granted defendant in the instant certificate otherwise would be to grant an extension of defendant's radial authority, not compatible with the provisions of the certificate, or regulations of the I. C. C.

The "base point area" of defendant's radial authority being coterminous with its regular route (A) authority we need not tarry long with the proposition whether defendant may combine its radial service authority with its regularity route so as to transport a shipment from the radial area to the uttermost point on its regular route authority. Whether defendant says it makes use of both its authorities under such circumstances seems to be beside the point. The authorities are overlapping. The uttermost terminal to which a shipment could be transported by defendant upon combination of authority is the extreme point to which defendant can transport the same shipment under its irregular route authority. The certificate and regulations of the I. C. C. do not permit defendant to "interchange" with itself from a radial to a regular route carrier, at any "gateway" it may choose along its base point area. See I. C. C. v. G. & M. Motor Transfer Co., supra. If any "service" is in contemplation of the radial authority granted defendant in its certificate a radial shipment should begin or end in its base point area. Service to a "gateway" is not service to a base point unless the "gateway" and "base point" are constituted the same area or place. Because defendant's base point area of its radial service and its regular route (A) authority are the same, there can be no tacking together of such authorities at a "gateway" from defendant's radial area to its regular route authority. When such "gateways" are attempted to be utilized by defendant as here, the separate authorities granted defendant overlap at the "gateway". When the authority granted defendant is overlapped or is repetitious, the terms of the certificate spell that they are "nailed down" to a single grant of authority.

What has here been said is in contemplation of through shipments transported by defendant from one segment of its radial authority to another segment thereof. That is, shipments such as are charged as violations in the instant case. We do not intend to interpret, restrict or consider shipments of some other type defendant may undertake to transport under the whole authority granted to it.

Defendant should be enjoined from further transportation such as set forth in the petition and as here prayed.

Counsel prepare formal findings of fact, conclusions of law, and decree, in accordance with this opinion.