## MALONE FREIGHT LINES, Inc. v. UNITED STATES et al.

### Civ. A. No. 6941.

United States District Court
N. D. Alabama, S. D.
Oct. 13, 1952.

947

W. H. Brantley, Jr., Birmingham, Ala., and, Wrape & Hernly, Memphis, Tenn., for plaintiff.

Allen Crenshaw, Asst. Chief Counsel, Interstate Commerce Commission, Washington, D. C., E. Riggs McConnell and William J. Hickey, Sp. Assts. to the Atty. Gen., and John D. Hill, U. S. Atty., Birmingham, Ala., for defendants.

Graham, Bibb, Wingo & Foster, Birmingham, Ala., Reuben G. Crimm, Atlanta, Ga., and, Allan Watkins and Edgar Watkins, Atlanta, Ga., for interveners.

Before RIVES, Circuit Judge, and KENNAMER and LYNNE, District Judges.

LYNNE, District Judge.

Plaintiff correctly invoked jurisdiction of this district court of three judges in this action to set aside a final order of the Interstate Commerce Commission.[1]

This case arose as a result of action taken by several motor common carriers[2] and interveners[3] who caused to be heard before the Interstate Commerce Commission the issue of whether or not Malone Freight Lines, Inc., was engaged in certain unlawful operations beyond the scope of the authority granted in its certificate of public convenience and necessity.[4]

This certificate, No. MC–75840, January 31, 1950, provides, among other things, for two separate motor common carrier routes described here as a regular route and an irregular route, as follows:

"Regular Routes: * * *

"(Commodity description omitted since it is not in dispute.)

"Between Anniston, Ala., and Opelika, Ala.:

"From Anniston over U. S. Highway 78 via Oxford, Ala., to junction Alabama Highway 37, thence over Alabama Highway 37 via Roanoke and Lafayette, Ala., to Opelika (also from junction U. S. Highway 78 and Alabama Highway 37 over U. S. Highway 78 to Heflin, Ala., thence over Alabama Highway 9 to junction Alabama Highway 37; also from Lafayette over

1. 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325; 49 U.S.C.A. § 17(9), Interstate Commerce Act, Part I; 49 U.S.C.A. § 305(h), Interstate Commerce Act, Part II, Sec. 205(h).

2. Akers Motor Lines, Inc., Carolina Freight Carriers Corporation, Johnson Motor Lines, Inc., McLean Trucking Company, Inc., and Atlanta-New Orleans Motor Freight Company. These parties intervened as defendants in this action.

3. Central of Georgia, Georgia & Florida, Louisville & Nashville, Nashville, Chattanooga & St. Louis, Seaboard Air Line, and Southern railroads.

4. This case is an outgrowth of a complaint filed in this court praying for injunctive relief from the alleged illegal conduct of Malone Freight Lines, Inc. The court sustained a motion to dismiss, holding that the primary jurisdiction doctrine was applicable in that the plaintiff had not exhausted its administrative remedies before the Interstate Commerce Commission. Akers Motor Lines, Inc., v. Malone Freight Lines, Inc., D.C., 88 F. Supp. 654. A hearing was then held May 9, 1950, before the Interstate Commerce Commission under provisions of 49 U.S. C.A. § 304, Interstate Commerce Act, Part II, § 204. A recommended report and order requiring Malone Freight Lines to cease and desist from certain operations was filed by the examiner, Tobias Naftalin, August 7, 1950. Malone filed exceptions September 15, 1950, and complainants replied October 12, 1950.

The report and order complained of herein of the Interstate Commerce Commission, Division 5, was entered August 23, 1951, in accord with the recommendations of the examiner. Malone filed a petion for reconsideration November 13, 1951, which was denied February 12, 1952. The effective date of the order of Division 5 of August 23, 1951, has been extended to November 1, 1952. The action in this court was filed April 9, 1952.

Alabama Highway 50 to Lanett, Ala., thence over U. S. Highway 29 to Opelika); and return over these routes. * * *

"Irregular Routes: * * *

"(Commodity description omitted since it is not in dispute.)

"Between Montgomery, Ala., and points and places in Alabama within 65 miles of Birmingham, Ala., including Birmingham, on the one hand, and, on the other, Trenton, N. J., Philadelphia, Pa., New Orleans, Gretna, and Destrahan, La., New York, N. Y., Winchester and Suffolk, Va., Wheeling, W. Va., points and places in that part of Georgia north of U. S. Highway 80, those in that part of Tennessee on and east of U. S. Highway 27, and those in Mississippi, North Carolina, and South Carolina."

Analysis of the two routes discloses that the regular and irregular routes overlap and include a part of the same territory by virtue of the fact that certain points and places in Alabama—for example, Anniston, Heflin, Oxford and Hollis School—are on the regular route, and also within the sixty-five-mile radius of Birmingham covered by the irregular route.

In the report of the Commission, Division 5, Docket No. MC–C–1132, August 23, 1951, an order was issued requiring plaintiff, Malone Freight Lines, Inc., to cease and desist from all operations in interstate commerce that involved certain unauthorized use of irregular route radial authority in violation of the Interstate Commerce Act.[5] This irregular route authorized shipment of property between two radial territories, a radial base area, hereinafter referred to as the base area, on the one hand, and a radial destination area, hereinafter referred to as the destination area, on the other. The base area included, among other things, points and places within sixty-five miles of Birmingham, Alabama. The destination area included numerous points, places and territories within eleven different states (including terri-

tory in Georgia north of U. S. Highway 80). The operation found to be unlawful consisted of transporting property between two points in the same destination area rather than between the base area and the destination area of the irregular route. For example, Malone would transfer property from LaGrange, Georgia, to New York City, New York, both origin and terminus being within the destination area of the irregular route. Such operations were performed under a claim of right as follows:

Step 1. Under authority of the described irregular route from the origin, LaGrange, Georgia, a point within the designation area of the irregular route to Hollis School, Alabama, a common point on both the regular and irregular routes.

Step 2. From Hollis School, Alabama, under authority of the described regular route to Anniston, Alabama, a common point on both the regular and irregular routes.

Step 3. From Anniston, Alabama, under the same authority used in Step 1 to New York City, New York, a place within destination area of the irregular route.

Malone contends this operation is authorized by lawfully tacking or combining, at common points, the regular and irregular routes as shown above, by using the irregular route from LaGrange, Georgia, to Hollis School, Alabama; the regular route from Hollis School, Alabama, to Anniston, Alabama; and the irregular route from Anniston, Alabama, to New York City, New York. The Commission and interveners claim this to be a double use of the irregular radial route authority under a subterfuge of tacking or combining the regular route without actual use of the regular route.

This cause is here on review upon the charge of the plaintiff that the order of the Commission was issued arbitrarily, unlawfully and capriciously and under and by reason of a disregard of the essential and basic facts and misapplication of the law, by which action complainant is about to be de-

5. 49 U.S.C.A. § 306(a), Interstate Commerce Act, Part II, § 206(a).

prived of property of great value without due process of law and to its irreparable damage.

An examination of the evidence upon which the order of the Commission is based reveals the fact that there is no dispute about the complex but uncontroverted facts surrounding the operation by Malone Freight Lines, Inc. The manner of operation found to be unlawful was admitted. The only question to be resolved here is whether the order of the Commission is lawful that found the action of Malone to be unlawful.

There can be no question but that a motor common carrier can operate in interstate commerce only under a certificate of authority issued by the Interstate Commerce Commission[6] or that the certificate shall specify the service to be rendered, the routes and territories where operations may be conducted or that from time to time the Commission may add such other reasonable terms, conditions and limitations as the public convenience and necessity may require.[7] Nor is there any doubt but that the general control of motor carriers is left to the continuous supervision and regulation of the Commission[8] or that the Commission should first resolve those questions of law and fact peculiar to its own sphere of competence.[9]

Our function does not involve a de novo construction of the certificate or a

re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law.[10] It is beyond our province to consider "the soundness of the reasoning by which its conclusions were reached".[11]

Plaintiff's primary contention throughout is that the regular and irregular routes were purchased from different companies at different times and that they may be combined, unified or tacked to perform these services lawfully. The irregular route was purchased from Howard Hall Company in 1945.[12] The regular route was purchased from North Alabama Motor Express in 1947,[13] at which time the Commission, in report MC–F–3488, decided December 19, 1947, stated in its general provisions that "in conducting regular and irregular route operations under the unified rights, Malone will be expected to preserve the separate nature of the operations and to operate within the scope of the rights by moving traffic only through authorized gateways."[14]

6. 49 U.S.C.A. §§ 306, 307, Interstate Commerce Act, Part II, §§ 206, 207.

7. 49 U.S.C.A. § 308, Interstate Commerce Act, Part II, § 208.

8. 49 U.S.C.A. § 304, Interstate Commerce Act, Part II, § 204.

9. Akers Motor Lines, Inc. v. Malone Freight Lines, Inc., D.C., 88 F.Supp. 654.

10. 5 U.S.C.A. § 1009, Administrative Procedure Act, June 11, 1946, as amended.

11. As stated by Mr. Justice Brandeis, Virginian Railroad Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463, a rate case. It was applied to a case under Motor Carrier Act by National Moving & Warehouse Corp. v. Interstate Commerce Commission, D.C., 1942, 48 F.Supp. 284. See Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct

432, 86 L.Ed. 586; United States v. Carolina Freight Carrier Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Chicago, R. I. & P. R. v. United States, 274 U.S. 29, 47 S.Ct. 486, 71 L.Ed. 911; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941; Interstate Commerce Commission v. Ill. Central Railroad, 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; United States v. New River Co., 265 U. S. 533, 44 S.Ct. 610, 68 L.Ed. 1165.

12. Malone Freight Lines, Inc.-Purchase-Howard Hall Co., 40 M.C.C. 161 (decided March 27, 1945).

13. Malone Freight Lines, Inc.-Purchase-North Alabama Motor Express, 50 M.C. C. 804 (decided December 19, 1947).

14. This general provision, in substance, may be found in Malone Freight Lines,

The Commission, by its order, recognized and permitted this unity of rights. In effect, the holding of the Commission is that the irregular route authority may be used to transport property from a point in the authorized eleven-state destination area to the base area or, specifically, to any common point or gateway of the two routes within the base area. This exhausts the authority of the irregular route. At this common point or gateway, the two routes may be tacked, unified or combined, and the property transported under authority of the regular route to any point on the regular route. At this point both the authority for the regular route as well as the authority of the unified rights of the combined routes are exhausted.

The plaintiff contends, on the other hand, that the unified rights are not exhausted but that it may then tack, unify or combine the two routes at a second common point and use the irregular route authority for a second time in making a through-movement to any other point in the eleven-state destination area of the irregular route.

 It is a well settled proposition that under the irregular route authority alone such a cross-haul between points in the same destination area is not authorized, even though the service is performed through the base area.[15] It is equally well settled that the same result may not be accomplished by tacking, unifying or combining an irregular route with a regular route co-terminus with the base area of the irregular route.[16]

 The fact that two routes were acquired at different times and unified in a single certificate cannot be interpreted to mean that Malone has greater rights than if they were acquired at the same time in a single certificate. To construe the unified rights of the two routes to mean that plaintiff could transport property from any point in the eleven-state destination area to any other point in that area by tacking, unifying or combining to perform service along the regular route would be "reading into its certificate an authority, not granted by the terms and provisions thereof, by custom, practice, or generally accepted interpretation of such authority as is granted in said certificate. First of all, because such a reading and contention wholly overlooks the 'service' defendant is authorized to perform under its certificate. Second, such a transportation constituted cross-hauling the 'base point' authority granted in the certificate. And, third, defendant thereby diffuses the base point of its irregular route authority into several base points not granted in the certificate."[17]

To sustain Malone's position would be to ignore completely the concept of "service" of any kind to any common point on the regular route. It is apparent that no service to points on the regular route is performed by tacking, unifying or combining the two routes at dual common points.

Inc.-Purchase-Howard Hall Co., 40 M. C.C. 161, 170 (1945), and again in Malone Freight Lines, Inc.-Purchase-North Alabama Motor Express, 50 M.C.C. 804 (1947).

15. Jack Cole Co., Inc., Common Carrier Application, 32 M.C.C. 199; Gay's Exp., Inc. v. Haigis and Nichols, 43 M.C.C. 277; National Moving & Warehouse Corp. v. Interstate Commerce Commission, D.C., 48 F.Supp. 284; Goncz v. Interstate Commerce Commission, 48 F.Supp. 286; Interstate Commerce Commission v. G. & M. Motor Transfer Co., Inc., D.C., 64 F.Supp. 302; Garford Trucking, Inc. v. United States, D.C., 64 F.Supp. 780.

16. Southwest Freight Lines v. Interstate Commerce Commission, 8 Cir., 184 F.2d 149; Id., 86 F.Supp. 587.

The order of the Commission sustained in full the recommendation of the examiner which included the finding that this identical operation by Malone was previously considered and found unlawful. This finding was made by the examiner in his report, Docket No. MC-C-1132, and repeated by the Commission in its order, 53 M.C.C. 353,355. The previous decision referred to is Malone Freight Lines, Inc.-Lease-Safety Transp. Corp., 56 M.C.C. 571 (decided May 19, 1950).

17. Interstate Commerce Commission v. Southwest Freight Lines, D.C., 86 F. Supp. 587, 593.

to serve those points indirectly under authority of the regular route when they may be served directly under authority of the irregular route and when, in fact, the movement is actually made to perform service between two points in the eleven-state destination area, none of which are common to the regular route.

It is not felt that Title 49 U.S.C.A. § 312, Interstate Commerce Act, Part II, § 212, providing for the revocation of a certificate, is applicable, and to apply it would be to assume the plaintiff's contention of the issue, namely, that the contested operations were authorized by the certificate and revoked by the Commission's order. The Commission's interpretation of the certificate never included the finding that these operations were authorized and thus it could not revoke authority that never existed.

The order of the Commission is affirmed. An appropriate order will be prepared and entered dismissing the complaint with prejudice to plaintiff.