McDOWALL TRANSPORT, Inc.,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Refrigerated Transport Co., Inc., Sidney Alterman, d/b/a Alterman Transport Lines of Miami, Florida, Central Truck Lines, Inc., Intervening Defendants.

Civ. No. 623.

United States District Court
S. D. Florida, Orlando Division.

April 21, 1955.

Warren H. Edwards, Orlando, Fla., and R. J. Reynolds, Jr., Atlanta, Ga., for plaintiff.

James E. Kilday, E. Riggs McConnell, Sp. Assts. to Atty. Gen., Stanley E. Barnes, Asst. Atty. Gen., and James L. Guilmartin, U. S. Atty., Miami, Fla., for defendant United States.

Edward M. Reidy, Gen. Counsel, and Asa J. Merrill, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Frank B. Hand, Jr., Washington, D. C., and John M. Allison, Tampa, Fla., for intervenors Alterman Transport Lines, Inc., and Central Truck Lines.

Allan Watkins, Atlanta, Ga., for intervenor Refrigerated Transport Co., Inc.

Before TUTTLE, Circuit Judge, and BARKER and SIMPSON, District Judges.

SIMPSON, District Judge.

Before us on final hearing is McDowall Transport, Inc.'s suit to enjoin as unlawful a cease and desist order of the Interstate Commerce Commission in its Docket MC–C–1355.

The issue before the Interstate Commerce Commission was limited to a determination of whether or not McDowall Transport, Inc., could legally transport "Frozen Fruit and Frozen Fruit Concentrate" by virtue of authority issued to it by the Commission to transport "Canned Fruit and Canned Fruit Juices, in Containers, over Irregular Routes" from and to the points described in its Certificate of Public Convenience and Necessity in Docket No. MC–98390 (Sub. No. 7).

The Commission held that this question must be answered in the negative and entered the complained-of order.

■ Our review in this proceeding is limited to a review of the attacked order, the evidence and findings supporting it, and is of necessity confined to the interpretation placed by the Commission upon a certificate of its own creation. Section 10(e), Administrative Procedure Act, 5 U.S.C.A. § 1009.

■ A clear statement of the applicable principles is found in Malone Freight Lines, Inc. v. United States, D. C., 107 F.Supp. 946, 949, affirmed per curiam 344 U.S. 925, 73 S.Ct. 497, 97 L. Ed. 712, wherein the Court, speaking through District Judge Seybourn H. Lynne, stated:

"There can be no question but that a motor common carrier can operate in interstate commerce only under a certificate of authority issued by the Interstate Commerce Commission or that the certificate shall specify the service to be rendered, the routes and territories where operations may be conducted or that from time to time the Commission may add such other reasonable terms, conditions and limitations as the public convenience and necessity may require. Nor is there any doubt but that the general control of motor carriers is left to the continuous supervision and regulation of the Commission or that the Commission should first resolve those questions of law and fact peculiar to its own sphere of competence.

"Our function does not involve a de novo construction of the certificate or a re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached' ".

The issues before us then, are the following:

1. Was the order of the Commission arbitrary?

2. Was the order of the Commission capricious?

3. Did the order constitute an abuse of discretion?

4. Did the order do violence to some established principle of law?

We conclude that each of these questions should be answered in the negative and the complaint dismissed.

The decision of the Commission contains ample findings supporting the complained-of order. We set forth some of the pertinent findings here, with a reference to the sheet number of the decision where the finding appears, as found in the copy thereof attached to the complaint. They are:

"1. In handling this commodity (frozen concentrate) low-temperature refrigeration is the primary preservative and is absolutely essential for the retention of the flavor of the product and for any prolonged storage. (Sheets 4 and 5.)

"2. The concentrate is packed in hermetically-sealed cans only because this type of container is the most convenient method known. Experimentation with other methods of packing, including plastic bags which are not hermetically sealed, has been made and so long as the temperature is kept at the proper level, the commodity remains undamaged. (Sheet 5.)

"3. In the case of frozen concentrate fermentation is*prevented only by freezing and continued temperature control. (Sheet 5.)

"4. The freezing of the concentrate is the preservative and not the container. (Sheet 7.)

"5. The can is utilized as a container merely for convenience and contributes in no material respect, other than as a container, to the preservation of the commodity (frozen concentrate). (Sheet 7.)

"6. Preservation (of frozen concentrate) is accomplished solely by the process of freezing and continued temperature control and deterioration and spoilage is retarded only so long as the commodity remains under refrigeration at low temperature. (Sheet 7.)"

There was no dispute between the parties at the hearing before the Commission as to the difference in the processes used to produce and preserve canned single-strength citrus juice on the one hand and frozen citrus juice concentrate on the other. This evidence may be summarized. In both processes the fruit is cleaned and the juice is extracted and purified by similar methods. At this point, the similarity ends. Pasteurization at high temperature and hermetical sealing in cans or jars is the essential process involved in the single-strength juice operation. Preservation is accomplished by sealing at high temperature.

Fruit juice concentrate, on the other hand, is the result of a complex extraction and evaporation process of fruit juices, in a partial vacuum, at low temperatures. A small quantity of fresh fruit juice is then added, the resultant product is hermetically sealed in cans, and frozen. In handling this commodity, low temperature refrigeration is the primary preservative, and is essential for retention of the flavor of the product and for any prolonged storage. The concentrate is packed in sealed cans for convenience, and not in order to preserve it. Other methods of packaging, including plastic bags which are not hermetically sealed, have been successfully used. Provided proper low temperature is maintained, the commodity remains undamaged. The can is used as a container for convenience only, not for preservation. Freezing and maintenance at low temperature only are essential to preservation.

▉ From the quoted findings, as supported by the evidence above summarized,

the Commission concluded that frozen fruit and frozen fruit juice concentrates, packaged in cans, are not "canned" within the meaning of the word "canned" as used by the Commission in the McDowall certificate, construed in the light of prior Commission decisions. The Commission found that McDowall's authority to transport "canned fruit and canned fruit juices" does not include authority to transport frozen fruits or frozen fruit juice concentrates packaged in cans, and issued the order of March 13, 1953, sought to be enjoined by this suit.

The reasonableness of the Commission's order on this record is demonstrated by a review of earlier decisions of the Commission defining the word "canned", when used in rate orders and motor carrier certificates.

In Eastbound Transcontinental Canned Goods (No. 2) 50 I.C.C. 62 (67), decided May 2, 1918, Division 3 of the Commission had to decide whether dried fruit packed in metal containers or cans was entitled to a published rate on canned goods, and stated:

"\* \* \* the word 'canned' denotes a process of preservation rather than the receptacle in which the goods are placed. In this sense dried fruits are not canned, but after being processed similarly in all respects to other dried fruits shipped in wooden containers are placed in metal cans, because those containers are commercially more sanitary and desirable packages."

Again, in Dockett M-2357, Fruit, and Pick-up and Delivery Rules, in Illinois, Minnesota, and Wisconsin, 44 M.C.C. 181, decided December 12, 1944, Division 2 of the Commission, in determining rates on "Fruit, fresh, cold packed (frozen fruit)", stated:

"The term 'canned fruit' does not include fruit of any kind or in any state or preparation simply because it may be shipped in a can or metal container. Where the word 'canned' is used with the disjunctive 'or' in connection with the word 'pre-

served', it denotes a process of preservation of the contents rather than the receptacle in which the goods are placed."

Again, in its decision (within a few weeks prior to the issuance of McDowall's certificate respecting canned fruit and canned fruit juices on December 24, 1948), in Docket MC-9685, The Emery Transportation Company Interpretation —Frozen Eggs, 48 M.C.C. 779, (decided November 8, 1948) the Commission construed Emery's certificate authorizing the transportation of canned goods and agricultural commodities. Emery was handling frozen eggs packaged in tin cans with capacities of either 10 or 30 pounds. The products were maintained under temperature of zero or below. The cans were covered with slip-over metal lids but not hermetically sealed. The Commission found that frozen eggs when packed as described were not canned goods, and went on the say:

"The choice of the term 'canned goods' as an appropriate term to be employed in the description of authorized commodities in motor carrier certificates and permits was surrounded by no special circumstances which would impel us to depart from the above long accepted definition of such term, and we find no difficulty in concluding that such term when found in motor carrier operating authorities should be construed as it has long been construed both generally and in our earlier reports. The can involved herein is merely a convenient container which contributes in no material respect, other than as a container, to the preservation of the commodity. It is not hermetically sealed. Preservation is accomplished solely by the process of freezing and spoilage is retarded only so long as the commodity remains under refrigeration. Clearly, the commodity description 'canned goods' does not include the described frozen mixtures."

Engrafted upon and an integral part of McDowall's certificate, when issued

December 24, 1948, were these earlier Commission decisions. Rightly accorded no weight, therefore, was McDowall's evidence in the Commission proceedings as to the contrary (or less limited) meaning of the word "canned" in the canning industry, in the citrus industry and in the citrus processing industry.

Lastly, in Dockett MC–720 Bird Trucking Company—Modification of Certificate, 53 M.C.C. 703, decided January 14, 1952, Division 5 of the Commission again interpreted the term "canned goods" in the following language:

" * * * For many years, the Commission has used the term to describe foods which have been processed and enclosed in hermetically sealed containers for the purpose of preservation. The word 'canned' refers to a process of preservation rather than the receptacle in which the foods are placed. Canned goods are frequently placed in hermetically sealed glass containers. Regardless of the kind of material from which the container is fashioned, the finished receptacle must be one necessary for the preservation of the commodity enclosed thereby and not one acting merely as a convenience container therefor."

The decisions of the Commission commencing with the 1918 case of Eastbound Transcontinental Canned Goods (No. 2), supra, interpreting the term "canned" as used in rate matters and in motor carrier certificates, are uniform and consistent. McDowall has cited no holding of the Commission to the contrary. Without variance, the Commission decisions respecting the meaning of "canned" or "canned goods" follow the same principle. That principle (the identical one invoked in the complained-of order) is that the word "canned" refers not to the type of container, but to the method of preservation. The decision reached is consistent with all of the Commission's earlier decisions and falls into place with them as a reasonable interpretation by the Commission of the certificate issued by it.

Accordingly, let final judgment be entered finding the issues against the plaintiff and with the defendants and intervening defendant carriers, and dismissing the complaint on its merits, with prejudice.