STATE OF NORTH CAROLINA, Ex Rel. UTILITIES COMMISSION, v. JULIUS M. FOX, DOING BUSINESS AS FOX TRANSFER COMPANY, GASTONIA, NORTH CAROLINA.

(Filed 15 January, 1954.)

**1. Carriers § 5—**

The effect of the grandfather clause in the Truck Act of 1947 is to preserve substantial parity between future and prior operations and to preserve to carriers, upon proper application, their rights existing at the time of the effective date of the statute. G.S. 62-121.5, G.S. 62-121.11.

**2. Carriers § 2—**

The interchange of freight between an intrastate and an interstate carrier, even though the property is being moved in interstate commerce, is left to the state commissions. USCA Title 49, sec. 306.

**3. Carriers § 5—Utilities Commission may not promulgate and enforce rule which would have effect of denying carrier his rights under grandfather clause.**

At the time of the effective date of the Truck Act of 1947 plaintiff, an irregular route intrastate carrier, was interchanging freight with interstate carriers, and was authorized to continue its operations under the grandfather clause. Thereafter, under the provisions of G.S. 62-121.6, the Utilities Commission promulgated a rule prohibiting the interchange of freight between carriers except upon approval of the Commission. The Interstate Commerce Commission advised plaintiff that he could conduct operations in interstate commerce only to the extent permitted him in intrastate commerce, and thereafter plaintiff's application to the Utilities Commission for authority to exchange freight in intrastate commerce was denied on the ground that applicant did not intend to exercise such right. *Held:* The Utilities Commission was without power to promulgate a rule denying plaintiff the exercise of rights conferred on him under the grandfather clause of the Truck Act, and plaintiff is entitled as a matter of right under the grandfather clause to permission to interchange freight with intrastate carriers whether he intends to exercise such right or not, if such permission is necessary in order for him to retain his right to interchange freight with interstate carriers, without being required to show public convenience and necessity.

APPEAL from *Pless, J.,* January Term, 1953, by North Carolina Utilities Commission, and by Overnite Transportation Company, Great Southern Trucking Company, Fredrickson Motor Express, Helms Motor Express, Inc., and Miller Motor Express, Interveners, and by Julius M. Fox, doing business as Fox Transfer Company, Applicant. From GASTON.

This cause was before us on a former appeal and the opinion filed therein is reported in 236 N.C. 553, 73 S.E. 2d 464. Substantially all the facts involved in the present appeal were stated in the above opinion. However, the facts essential to an understanding of the present appeal are as follows:

UTILITIES COMMISSION *v.* FOX.

1. The applicant in this proceeding, Julius M. Fox, trading as Fox Transfer Company, is an irregular route common carrier, authorized to transport certain designated classes of property in a limited area within the State of North Carolina, pursuant to the terms of Certificate No. C-178, issued to him by the North Carolina Utilities Commission on 3 November, 1950. He has also been granted Certificate No. MC-97873 by the Interstate Commerce Commission, by the terms of which he is authorized to interchange freight with common carriers in interstate commerce, subject to the approval of the North Carolina Utilities Commission. (Unless otherwise designated, the word "Commission," when hereinafter used, shall mean the North Carolina Utilities Commission.)

2. Each of the interveners holds a certificate duly issued by the Commission, which authorizes it to transport general commodities over regular routes.

3. Subsequent to the issuance of the applicant's certificate as an irregular route common carrier by the Commission, which certificate was issued pursuant to G.S. 62-121.11, the Commission adopted what is known as Rule 44, which, among other things, prohibits the interchange of freight between an intrastate regular route common carrier and an intrastate irregular route common carrier, and between two intrastate irregular route common carriers, except after application to and approval of the Commission.

4. After the adoption of Rule 44, which became effective 1 July, 1951, the applicant was advised by the Interstate Commerce Commission, on 5 December, 1951, that under the regulations of that Commission the applicant "may conduct operations in interstate commerce only to the extent permitted in intrastate commerce by his State certificate." Thereafter, on 19 January, 1952, the applicant applied to the Commission for an amendment to his Certificate C-178 so as to permit him to interchange freight of all kinds with four named common carriers of property, each of whom was duly licensed to transport property by the Interstate Commerce Commission and by the North Carolina Utilities Commission.

5. At the hearing before the Commission on the above application, the applicant's evidence established these pertinent facts: That prior to the enactment of the North Carolina Truck Act of 1947, the applicant interchanged interstate freight with certain of the carriers named in his application; that about ninety-eight per cent of his business originates in Gaston County, most of which comes from a single corporation; that all the carriers with whom he seeks to interchange freight are interstate carriers; that he has never interchanged intrastate shipments and does not intend to do so; that he does some intrastate business but no intrastate interchange.

6. The Commission held that upon this evidence it would not grant the applicant the right to interchange intrastate traffic with other carriers, a right the applicant did not intend to exercise, in order to give him the right to interchange interstate traffic with other carriers. The Commission also held as a matter of law that it was without power to grant or deny the applicant the right to engage in interstate commerce and that the interchange of interstate traffic within or without the State of North Carolina is not within its jurisdiction. For the reasons stated, the application was denied and dismissed on 21 March, 1952.

This appeal is from a judgment entered by Judge J. Will Pless, Jr., dated 10 July, 1953, which judgment was entered after a hearing at the January Civil Term of the Superior Court of Gaston County at which time it was stipulated that the judgment could be rendered by the court out of term and out of the District.

The matter was heard on the record as certified to the Superior Court by the Commission, and his Honor held:

"That the North Carolina Utilities Commission is vested with authority to regulate and control the interchange of shipments of freight between irregular route common carriers and other common carriers of freight of all classes when the complete movement and transportation of said freight between the time of its being accepted from the shipper and its delivery to the carrier with whom it is being interchanged is within the confines of the State of North Carolina, so long as the determinations of the Utilities Commission are in compliance with the provisions of the North Carolina Truck Act of 1947 and the provisions of the State and Federal Constitutions.

"WHEREUPON, and pursuant to the foregoing conclusion of law, this cause is remanded to the North Carolina Utilities Commission for their determination as to whether under the facts appearing in this record the public interest and the North Carolina Truck Act of 1947 require that the relief sought by the applicant herein be granted and with the direction that said North Carolina Utilities Commission make a definite determination upon the questions of law arising upon this record to the end that the applicant may be advised as to the forum or tribunal in which his rights are to be determined;

"And it is further ordered that the Utilities Commission in its future order or orders make definite findings of fact and conclusions of law to the end that the Court may properly review said conclusions in the event of subsequent appeal by any of the parties."

From the foregoing judgment the North Carolina Utilities Commission, the interveners, and the applicant appeal, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the North Carolina Utililies Commission.*

*Arch T. Allen for Great Southern Trucking Co.*

*J. Ruffin Bailey for Helms Motor Express, Inc., Miller Motor Express, and Fredrickson Motor Express.*

*J. Wilbur Bunn for Overnite Transportation Co.*

*Basil L. Whitener for applicant, Julius M. Fox.*

DENNY, J. The North Carolina Truck Act, being Chapter 1008 of the Session Laws of North Carolina, in Section 1 thereof, codified as G.S. 62-121.5, contains a declaration of policy which reads in pertinent part as follows: ". . . that the transportation of property by motor carriers for compensation over the public highways of the State is a business affected with the public interest; that there has been shown a definite public need for the continuation and preservation of all existing motor carrier service, and to that end, it is hereby declared to be the policy of the State of North Carolina to preserve and continue all motor carrier transportation services now afforded this State, and to provide fair and impartial regulations of motor carriers of property in the use of the public highways in such a manner as to promote, in the interest of the public, the inherent advantages of highway transportation; . . . to encourage and promote harmony among motor carriers of property; between such carriers and carriers of property by rail or water, and between all carriers of property and the shipping public; to foster a co-ordinated State-wide motor carrier service; to conform with the national transportation policy and the federal motor carrier acts in so far as the same may be found practical and adequate for application to intrastate commerce; and to co-operate with other states and with the federal government in promoting and co-ordinating intrastate and interstate commerce by motor carriers."

Section 2 of the Act, codified as G.S. 62-121.6, vests in the Commission authority to administer and enforce the provisions of the Act and to make and enforce reasonable rules and regulations to that end.

Section 7 of the Act, codified as G.S. 62-121.11, contains, among other things, the following: "Subject to Section 62-121.20, if any carrier or predecessor in interest was in *bona fide* operation as a common carrier by motor vehicle on January 1st, 1947, over the route or routes or within the territory for which application is made under this section, and has so operated since that time, . . . except . . . as to interruptions of service over which the applicant or its predecessor in interest had no control, the commission shall issue a certificate to such carrier without requiring further proof that public convenience and necessity will be served by such

operation . . .;" provided, such carrier furnished certain information to the commission on or before the effective date of the Act. The applicant herein duly qualified as an irregular route common carrier in the manner prescribed by the foregoing statute.

The ordinary meaning and effect of a grandfather clause contained in an act authorizing the transportation of passengers or property by motor vehicle is to preserve substantial parity between future and prior operations. *Utilities Commission v. Fleming,* 235 N.C. 660, 71 S.E. 2d 41; *Crescent Express Lines v. United States,* 320 U.S. 401, 88 L. Ed. 127; *United States v. Carolina Freight Carriers Corp.,* 315 U.S. 475, 86 L. Ed. 971; *Goncz v. Interstate Commerce Commission,* 48 F. Supp. 286; *Chicago, St. P., M. & O. Ry. Co. v. United States,* 50 F. Supp. 249, affirmed 322 U.S. 1, 88 L. Ed. 1093; *Transamerican Freight Lines v. United States,* 51 F. Supp. 405; *Peninsula Corp. v. United States,* 60 F. Supp. 174.

There can be no legitimate dispute about the facts involved in this proceeding. It was clearly established in the hearing before the Commission that the applicant, prior to the adoption of the North Carolina Truck Act in 1947, and until the receipt of the notice from the Interstate Commerce Commission, dated 5 December, 1951, was engaged as an irregular route common carrier of property by motor vehicle in the identical manner he now seeks to continue. He has not applied for any additional rights, but merely requests that those rights preserved to him by Section 7 of the Truck Act, known as the "grandfather clause," be kept inviolate.

The Commission, in recognition of the applicant's rights under the grandfather clause contained in the Act, expressly authorized and approved the operations carried on by him as an irregular route common carrier from the effective date of the Act on 1 October, 1947, until the effective date of its Rule 44, 1 July, 1951.

We are, therefore, confronted with this question: Does the Commission have the power to promulgate a rule, pursuant to the provisions of G.S. 62-121.6, purporting to regulate common carriers of property by motor vehicle under the North Carolina Truck Act, and then to interpret or enforce the rule in such manner as to deny the exercise of rights which the Legislature in clear and express terms preserved to all motor vehicle carriers of property who were in *bona fide* operation on 1 January, 1947, and who have met the additional requirements contained in Section 7 of the Act? The answer must be in the negative.

There is nothing in the North Carolina Truck Act which prohibits the interchange of freight between intrastate carriers or between an intrastate carrier and an interstate one. In fact, the Congress of the United States has recognized the existence of the right of the States acting through a proper agency to authorize the interchange of freight between

an intrastate and an interstate carrier.    Section 306, Title 49 of the USCA, points out the manner in which a common carrier by motor vehicle may obtain a certificate under the grandfather clause contained in part two of the Interstate Commerce Act, and also upon a showing of public convenience and necessity.    The section, however, contains this significant proviso : *"And provided further,* That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to. obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board.    Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter."

We think the above proviso clearly shows that the intent of Congress was to leave the question of the interchange of freight between an intrastate and an interstate carrier to the State commissions, even though the property or the passengers were being moved in interstate commerce, provided the intrastate carrier was transporting the property or passengers between places within the State.

In our opinion, there is error in the judgment entered below in so far as it remands the cause to the Commission to determine whether under the facts appearing on the record the public interest and the North Carolina Truck Act require that the relief sought by the applicant be granted, and the judgment is modified to that extent.    The applicant herein was not required under the provisions of the North Carolina Truck Act to show public convenience and necessity in order to obtain his certificate pursuant thereto as an irregular route common carrier.    Neither will he be required to do so in order to preserve such rights.

We do not express an opinion as to the validity or reasonableness of Rule 44, in so far as its provisions may be applicable to intrastate carriers of property by motor vehicle pursuant to a certificate granted by the Commission upon a finding of public convenience and necessity.    However, if the applicant, a holder of a franchise or certificate pursuant to the grandfather clause contained in the North Carolina Truck Act, in light of the provisions contained in Rule 44, must have permission or approval of the Commission to interchange freight with other intrastate carriers, whether he intends to exercise such right or not, in order to retain his right to interchange freight with interstate carriers, he is entitled to such permission or approval.    Moreover, he is entitled to this permission or approval not as a matter of discretion or as an act of grace, but as a matter of law.

Let this opinion be certified to the Superior Court immediately, to the end that the cause may be remanded to the Commission for disposition in accord with this opinion.

Modified and affirmed.