STATE OF NORTH CAROLINA EX REL. NORTH CAROLINA UTILITIES
COMMISSION, v. YOUNGBLOOD TRUCK LINES, INC., APPLICANT-PETI-
TIONER; GREAT SOUTHERN TRUCKING COMPANY, McLEAN TRUCK-
ING COMPANY, INC., MILLER MOTOR EXPRESS, INC., FREDRICK-
SON MOTOR EXPRESS CORP., HELMS MOTOR EXPRESS, INC.,
OVERNITE TRANSPORTATION COMPANY, AND THURSTON MOTOR
LINES, INC.

(Filed 3 February, 1956.)

**1. Utilities Commission §§ 3, 5—**

Where the Utilities Commission dismisses a petition on the ground that
it is without jurisdiction to grant the relief sought, the merits of the con-
troversy are not before it for decision, and neither the order of the Com-
mission nor the judgment of the Superior Court on appeal should contain
findings of fact or conclusions of law in respect to the merits, and such
irrelevant findings and conclusions may be stricken.

**2. Pleadings § 19a—**

Upon motion to dismiss on the ground that the court has no jurisdiction of the subject matter, the court is limited to a consideration of factors bearing on the question of jurisdiction as disclosed by the record and the pleadings.

**3. Utilities Commission § 2: Carriers § 5—**

The Utilities Commission has no jurisdiction to determine a petition of an irregular truck carrier to be authorized to exchange freight with a regular truck carrier when the regular truck carrier does not join in the petition and the petition nowhere alleges that the regular truck carrier had made or is desirous of making an agreement with petitioner for interchange of freight.

APPEAL by Protestants, Helms Motor Express, Inc., Great Southern Trucking Company, McLean Trucking Company, Inc., Miller Motor Express, Inc., Fredrickson Motor Express Corp., Overnite Transportation Company, and Thurston Motor Lines, Inc., from *Clarkson, J.,* at 1 August, 1955, Special Term of MECKLENBURG.

Proceeding instituted before the North Carolina Utilities Commission by petition of Youngblood Truck Lines, Inc., for authority to interchange freight with Helms Motor Express, Inc.

The petitioner alleges that it is an irregular route common carrier of motor freight in the State of North Carolina, operating under franchise certificate issued by the North Carolina Utilities Commission authorizing it to transport freight over irregular routes to and from all points and places in the State west of U. S. Highway No. 1; that petitioner's franchise certificate was granted under the Grandfather Clause of the North Carolina Truck Act of 1947, now codified as G.S. 62-121.11; that the petitioner also holds franchise certificate of the Interstate Commerce Commission, authorizing it to transport interstate freight in the same area described in its North Carolina certificate, and in other areas and many other states, north, east, south and west thereof; that prior to 1 January, 1947 (the qualifying date of the Grandfather Clause), the petitioner engaged in interchange of freight with Helms Motor Express, Inc., at points within petitioner's franchise territory, "where interchanges were practicable and for the best interests of the shipping public"; that the petitioner "is desirous of continuing said interchange of freight with the said Helms Motor Express, Inc., . . ."; that petitioner's "shippers and customers are entitled to the service available to them by . . . continuation of said interchange"; that petitioner "is entitled to have permission and approval of the right to interchange motor freight within its franchise (territory) with said Helms Motor Express, Inc."

The protestants, all being regular route common carriers of motor freight in the State of North Carolina, came in as intervenors and objected to the petition, alleging that the creation of authority to interchange freight between the petitioner and the regular route common carrier, Helms Motor Express, Inc., would create a new service into the territory presently served directly or through interchange over routes of the protesting carriers; that the routes are adequately served by regular route common carriers and that there is no need for the additional authority sought by the petitioner; that to grant the additional authority would seriously jeopardize operations presently carried on by the protesting carriers, and other regular route common carriers within the State.

The cause came on for hearing before the North Carolina Utilities Commission, hereinafter referred to as the Commission, on 29 March, 1955. By consent, the case was consolidated for trial with seven other similar cases in which Youngblood Truck Lines, Inc., is petitioner.

Thereupon the protestants directed attention to Section 24 of the North Carolina Truck Act of 1947 and to Revised Rule 44 of the Commission. The pertinent part of Section 24 of the Truck Act (now codified as G.S. 62-121.28(2)) is as follows:

"(2) Except under special conditions and for good cause shown every common carrier by motor vehicle authorized to transport general commodities over regular routes shall establish reasonable through routes and joint rates, charges, and classifications with other such common carriers by motor vehicle, *and with the approval of the Commission, may do so with irregular route common carriers by motor vehicle,* common carriers by railroad and/or express and/or water." (Italics added.)

The protestants, in view of the foregoing statute and Revised Rule 44, moved the Commission to dismiss the petition on the ground that it was without jurisdiction to grant the relief sought, it appearing that Helms Motor Express, Inc., is not a petitioning party to the proceeding and that the petitioner does not allege that Helms Motor Express, Inc., has made, or is desirous of making, an interchange agreement with the petitioner.

After argument of counsel, the Commission sustained the motion of the protestants and Chairman Winborne stated that the proceeding was dismissed. The petitioner noted an exception to the ruling and indicated a desire to appeal. Following this, Chairman Winborne announced that the ruling would be put in the form of an order, which would be subject to petition for rehearing and other rules of appellate procedure.

On 22 April, 1955, the Commission filed and promulgated its order sustaining the motion to dismiss. The order contains a statement of background facts and conclusions in part as follows:

"Prior to the passage of the North Carolina Truck Act of 1947, the only carriers of property by motor vehicle which were regulated in the State of North Carolina were those transporting property over regular routes. The carriers which operated as irregular route carriers were in a sense 'free lance' operators who were permitted to operate free from regulation insofar as the State of North Carolina was concerned. When the North Carolina Truck Act was passed in 1947, a declaration of policy was enunciated, and it was stated:

> 'that upon investigation, it has been determined that the tranportation of property by motor carrier for compensation over the public highways of the State is a business affected for the public interest; that there has been shown a definite public need for the continuation and preservation of all existing motor carrier service, and to that end it is hereby declared to be the policy of the State of North Carolina to preserve and continue all motor carrier services now afforded this State.' (From Section 1, North Carolina Truck Act—G.S. 62-121.5.)

"Section 2 (G.S. 62-121.6) of the Truck Act delegated jurisdiction with full power and authority to adequately enforce the provision of said Act, and to make and enforce reasonable and necessary rules to that end to the North Carolina Utilities Commission.

"Under Section 3 (G.S. 62-121.7), Subsection (13) of the said Act, common carriers were defined as:

> 'Common carrier by motor vehicle means any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate commerce of property of any class, or classes, thereof for compensation whether over regular or irregular routes.'

"Under the power and authority vested in it by Section 2 of the Truck Act, and specifically under the authority authorizing the making and enforcement of reasonable and necessary rules and regulations to carry out and administer said Truck Act, the North Carolina Utilities Commission adopted a rule as a part of the 'Rules and Regulations for the Administration and Enforcement of said Act,' known as Rule No. 44 which prescribes that:

> 'No traffic shall be interchanged between contract carriers, nor between a contract carrier and a common carrier, nor between a regular route common carrier and an irregular route common car-

rier, nor between two irregular route common carriers, except after application to the Commission.' . . .

and after notice to all parties of interest, and a hearing thereon, such be authorized by the Commission.

"Section 7 (G.S. 62-121.11) of the North Carolina Truck Act, familiarly known as the Grandfather Clause, provides:

'(1) . . . "If any carrier or predecessor in interests was in *bona fide* operation as a common carrier by motor vehicle on January 1, 1947, over the route or routes or within the territory for which application is made under this section, and has so operated since that time, or if engaged in furnishing seasonal service only, was in *bona fide* operation on January 1st, 1947, during the season ordinarily covered by its operation, and has so operated since that time, except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue a certificate to such carrier without requiring further proof that public convenience and necessity will be served by such operation" '—

if such carrier qualifies itself as in the manner prescribed by other subsections of section 7.

"The petitioner obtained its certificate to operate as an irregular route carrier under and by virtue of Sec. 7 of the Grandfather Clause of the Truck Act immediately hereinabove quoted.

"The petitioner alleges and contends that prior to the passage of the Truck Act, and specifically prior to the 1st day of January, 1947, the qualifying date for Grandfather Rights under the Truck Act, that it was engaged in the interchange of freight with HELMS MOTOR EXPRESS, INC. at points and places within its franchise area, and it alleges that by reason thereof, it has the legal right to now interchange with HELMS MOTOR EXPRESS, INC. It bases its contention in this respect upon the decision of the Supreme Court of North Carolina in the case entitled, State of North Carolina *ex rel.* UTILITIES COMMISSION v. JULIUS M. Fox, reported in Volume 239 N.C. p. 253. The FOX case was a proceeding wherein Julius M. Fox, an irregular route carrier authorized to transport certain properties in a certain area of North Carolina, and who obtained said rights by virtue of the Grandfather Clause of the Truck Act, sought authority from the Commission to interchange freight with other carriers for the reason that the said Julius M. Fox was engaged in interstate transportation, and could obtain no rights to interchange interstate freight without holding a certificate for such authority in intrastate commerce. In the language of the Supreme Court of North Carolina it considered the question: 'Does the Commis-

sion have the power to promulgate a rule, pursuant to the provision of General Statutes 62-121.6, purporting to regulate common carriers of property by motor vehicle under the North Carolina Truck Act, and then interpret or enforce the rule in such manner as to deny the exercise of rights which the Legislature in clear and express terms preserved to all motor vehicle carriers of property who were in *bona fide* operation on 1 January 1947, and who have met the additional requirements contained in Section 7 of the Act?' The Court said the answer must be in the negative. It further says:

. . .

'We do not express an opinion as to the validity or reasonableness of Rule No. 44, insofar as its provisions may be applicable to intrastate carriers of property by motor vehicle pursuant to a certificate granted by the Commission upon a finding of public convenience and necessity. However, if the applicant, a holder of a franchise or certificate pursuant to the grandfather clause contained in the North Carolina Truck Act, in light of the provisions contained in Rule 44, must have permission or approval of the Commission to interchange freight with other intrastate carriers, whether he intends to exercise such right or not, in order to retain his right to interchange freight with interstate carriers, he is entitled to such permission or approval. Moreover, he is entitled to this permission or approval not as a matter of discretion or as an act of grace, but as a matter of law.'

"After the decision in the FOX case the Commission, with notice to all common carriers over both regular and irregular routes in the State of North Carolina, and in a duly constituted hearing for such purpose, revised Rule 44 of its Rules and Regulations for the Administration and Enforcement of the Truck Act, and prescribed Rule 44 revised to be:

'(1) Except under special conditions and for good cause shown, all regular route common carriers of general commodities by motor vehicle operating in intrastate commerce in North Carolina SHALL establish through routes and joint rates with other such common carriers, and shall interchange intrastate traffic as a matter of course under interchange agreements.'

'(2) All common carriers of property by motor vehicle operating in intrastate commerce in North Carolina, whether regular route or irregular route common carriers MAY establish through routes and joint rates and interchange intrastate traffic with any and all common carriers of property by motor vehicle, railroad, express, or water, with respect to traffic which either originates at or is destined to points in North Carolina not on any route of a regular route carrier of general commodities, such interchange of traffic to

be made pursuant to agreements between the participating carriers therein, copies of which said agreements shall be filed with the Commission.'

'(3) Subject to the provisions of paragraphs (1) and (2) hereof, no motor carrier of property operating in intrastate commerce in North Carolina shall interchange intrastate traffic except after application to and written permission from the Commission. In such cases, the applicant shall file with the Commission a correct and true copy of the proposed interchange agreement, together with a statement under oath of facts from which the Commission may determine that the proposed interchange of traffic in the particular case is, or will be, in the public interest.'

"The effect of Rule 44 is not to deprive any carrier, whether he be a regular or an irregular route carrier of the right to interchange freight with other common carriers, but is to provide an orderly procedure whereby such an arrangement may be put into effect. The rule provides for such interchange of traffic to be made pursuant to agreements between the participating carriers, copies of which are to be filed with the Commission, together with a statement under oath of the facts from which the Commission may determine that proposed interchange of traffic in the particular case is, or will be, in the public interest. The rule further provides that the same shall not apply to or affect in any manner whatsoever the interchange of interstate traffic at points in the State of North Carolina. If there is to be maintained an orderly and workable system of transportation by motor vehicle within the State of North Carolina, the same must be based upon reasonable rules and regulations administered for the protection of the rights of all common carriers and to the welfare of, and in the best interest of the general public. This is what the Commission seeks to do by revised Rule 44.

"It is to be noted that in the FOX case the Supreme Court ruled that an irregular route carrier had the right to interchange with other carriers, upon the same basis he had interchanged prior to January 1, 1947, the qualifying date for Grandfather Rights. The Court did not hold such carriers were required to interchange, nor that other carriers were required to interchange with such carriers. It merely held that the Commission could adopt no rule which deprived an operator of the right to interchange if he could qualify under the Grandfather Clause. It is to be further noted that the Supreme Court did not rule out the authority of the Commission to make reasonable rules and regulations for the enforcement of the Truck Act. In fact, the Court recognized the right of the Commission to make such rules and regulations. Had the Court held that the Commission could not prescribe reasonable rules and regulations, the effect would have been to destroy the Truck

Act by rendering it useless as a regulatory measure. If all carriers were to be permitted to do just as they had prior to the passage of the Truck Act, without any prescribed rules or regulations to follow, then the Truck Act itself would be ineffective.

"Interchange of freight from one carrier to another has always been based upon an agreement between the carriers involved. The law requires that all regular route carriers interchange with one another, but makes no such requirement as to irregular route carriers. The interchange agreements made between carriers are to provide points of interchange, the division of rates and charges, and any and all other necessary and pertinent arrangements that need to be made between said carriers to properly effectuate the interchange. *The Commission has judicial knowledge of the fact that irregular route carriers, although not regulated by the Commission prior to the enactment of the Truck Act, in many instances prior to January 1, 1947, did interchange freight with other carriers, both regular and irregular. It likewise has judicial knowledge of the fact that all such interchange arrangements were by agreements entered into by the carriers involved. The decision of the Supreme Court in the FOX case in our opinion in nowise obviated the necessity of an agreement between carriers who wish to interchange being made prior to their engaging in such with one another.* (Italics added.)

"A regular route common carrier is defined under the Rules and Regulations of the Commission to be:

'The words "regular route" identify this type of carrier as one who makes regular trips over the same highways between the same points, and the word "common" identifies the carrier as one who serves the general public.

'A regular route common carrier makes his service available to the public by operating over the same route with such regularity that shippers may rely upon a truck being along at reasonably regular intervals. It is a scheduled operation. That does not mean that the trucks of the carrier will operate on fixed time schedules as is necessary in the transportation of passengers by train or bus. The operation is a scheduled or regular route operation if it may be anticipated by shippers without making any special arrangement or contract with the carrier. Such a service may be at some time during a certain hour, or it may be at some time during the forenoon or at some time during the afternoon or at some time during the day or on certain days of the week in cases in which business on the route does not justify daily service. Whether the operations are hourly, daily, or weekly, it is the known practice or plan of carriers to operate over the route at regular intervals that makes the operation a scheduled or regular operation.

'Any operation over the same highways between the same points that is made known to the public by advertising, through a course of dealing with shippers, or by any other means that leads shippers to understand that they may depend upon its regularity over the route, is a regular route operation.'

"An irregular route common carrier is defined to be:

'The service rendered by this type of common carrier is in direct contrast with that of a regular route carrier. The words "regular" and "irregular" have a very different meaning, and the two types of service are just as different. They are both common carriers but they differ widely in the way they operate.

'An irregular route carrier may operate every day and all day, but his operations over the same highways or between the same points are irregular. He may operate over the same highway between the same points two or more times on a single day and then not operate over that highway again for a month. His operations are not repeated over any highway or between any points according to any predetermined or prearranged plan or understanding with shippers. Such a carrier makes his service available to the public by responding to specific calls. He goes when and where he is called upon within the bounds of the territory he undertakes to serve. One call may be for very desirable business over a paved highway, and the next call may be for less desirable business to some isolated point or to a farmhouse or to a sawmill in the woods. If the call is for service within the territory he undertakes to serve and is for the transportation of property or commodities he undertakes to haul for the public, he must perform the service. That is the type of service an irregular carrier elects to give the public, and he is not permitted to channel his operation into the type of service the regular route carriers elects to perform.

'Such an election is made by the carrier by the application he files for operating rights. Neither type of carrier may change the rights granted except upon a new application and after a hearing before the Commission.'

"To permit, authorize, or require unlimited interchange of property between irregular route carriers, or between irregular and regular route carriers would have the effect of abolishing the distinction between the two which is well recognized by law. It would likewise have the effect of enlarging the scope of operation for all irregular route carriers which was not the intent of the General Assembly when it prescribed the Truck Act. In this proceeding the petitioner seeks to interchange traffic with a regular route carrier whose operations are wholly within the territory the petitioner is authorized and obligated to serve. If the

HELMS MOTOR EXPRESS, INC. was required to interchange any and all traffic with the petitioner without the right to agree upon terms and conditions surrounding such interchange, the petitioner could assemble freight in any quantity throughout the territory it is authorized to serve, and require HELMS MOTOR EXPRESS, INC. to distribute the same from an interchange point to points upon the Helms route on such terms and conditions as the petitioner might see fit to impose. Thus, the Commission prescribes by rule that if such interchange is to be effectuated, that the same must be upon an agreement entered into by both parties to the interchange, specifying the terms and conditions of such interchange, the method and manner of dividing tariffs therefor, and all in the best interests of the general public. We think such a rule to be fair and reasonable. The petitioner herein is not being denied the right or privilege of interchanging freight with other carriers in North Carolina. It has that right in the words of the Supreme Court of North Carolina, 'not as a matter of discretion or as an act of grace, but as a matter of law.' It need not apply to this Commission to establish that right which it has at law, but it cannot seek from the Commission authority to interchange freight with any carrier without bringing such other carrier before the Commission with an agreement entered into between it and said carrier. If it desires to make interchange of traffic with HELMS MOTOR EXPRESS, INC., and HELMS MOTOR EXPRESS, INC. desires to handle freight in conjunction with the petitioner by interchange, then both parties need but to file their agreement with the Commission, accompanied by a statement under oath of the facts surrounding such, from which the Commission may determine that the interchange of such traffic is in the public interest.

"Thus, the Commission finds:

"(2) . . . that prior to January 1, 1947, the qualifying date for Grandfather Rights under the said Truck Act, the petitioner engaged in the interchange of freight with Helms Motor Express, Inc. to and from points and places within its franchise area; . . .

"(4) That no agreement has been entered into between the petitioner, Youngblood Truck Lines, Inc., and Helms Motor Express, Inc., concerning the interchange of freight; *and that prior to January 1, 1947, all interchange arrangements between irregular route carriers and other carriers were by virtue of an interchange agreement entered into between the carriers making such interchange;* and    (Italics added.)

"(5) That in the absence of such an agreement, the Commission is without jurisdiction to authorize or require an interchange of property between these carriers.

"WHEREFORE, the motion of the protestants herein that this cause be dismissed is granted and allowed, and it is therefore ORDERED that said

cause be and the same is hereby dismissed; and that a copy of this order be transmitted to the petitioner and its attorney of record, and to all protestants and their attorneys of record."

In due course and pursuant to the procedure outlined in G.S. 62-26.6, both sides petitioned the Commission for rehearing. Youngblood's petition specifies numerous grounds on which it considers the Commission's decision and order of dismissal unlawful, unwarranted, and erroneous. The protestants, being satisfied with the ultimate decision of the Commission in dismissing the proceeding for want of jurisdiction, nevertheless took exception to a number of findings set out in the formal order entered by the Commission.

Both petitions to rehear were denied *in toto* and each side, as allowed by statute (G.S. 62-26.6), appealed to the Superior Court.

The case was heard on appeal by Judge Clarkson, after which judgment was entered, which in material part is as follows:

"The Court being of the opinion that the Order entered by the North Carolina Utilities Commission on the 22nd day of April 1955 *does not, as contended by the applicant, retain in the North Carolina Utilities Commission any discretion or grace as to Applicant's rights to interchange traffic with* HELMS MOTOR EXPRESS, INC. *if it is able to effect an interchange agreement with said carrier";* (Italics added.)

"The Court being of the opinion that the words contained in said Order such as 'from which the Commission may determine that proposed interchange of traffic in the particular case is, or will be, in public interest' are not by effect or meaning an attempt of the Utilities Commission of North Carolina to deprive the Applicant of its right of interchange with said carrier, but is merely a reservation of the power vested in said body to assure that all operations of motor carriers are conducted in the public interest; and

"The Court being of the opinion that the Applicant herein, Youngblood Truck Lines, Inc., pursuant to said Order *has the right if it can do so to re-establish an interchange relationship with said Helms Motor Express, Inc., and upon establishing such a relationship may put same into effect by filing the written terms of said interchange agreement with the North Carolina Utilities Commission and that the only power obtained by the North Carolina Utilities Commission in said Order is the regulatory power of assuring that all of the terms of said agreement are to the public interest, just as they would in the regulation of tariffs, schedules, operations, etc.:* and (Italics added.)

"The Court being further of the opinion that the Protestants' exceptions to the findings of fact contained in said Order are not well taken and that said findings of fact are supported by the pleadings, admissions of counsel in the record, the undenied allegations of the petition

offered in evidence and the records of the North Carolina Utilities Commission, but the Court being further of the opinion that even if said findings of fact were not supported by competent evidence, the Protestants were not injured or damaged thereby nor were the Protestants injured or damaged by the ruling of the Commission in dismissing the action upon their motion; and

"The Court being of the opinion that said Order places in the hands of the Protestants solely the power of voluntarily entering into an agreement with the Applicant or not as they see fit, and the Court therefore finding as a fact that the Protestants are not in any way adversely affected by the Commission's Order or the findings of fact contained therein and for said reasons is of the opinion that the Protestants' objections and exceptions should be overruled and denied; and

"The Court, pursuant to the provisions of Section 62-26.10 of the General Statutes of North Carolina, being vested with the power of interpreting and modifying the orders of the North Carolina Utilities Commission and determining the meaning and applicability of the terms of any Commission action as a matter of law;

"IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED, and DECREED as follows:

"(1) That this Court interprets and to that extent modifies the order of the North Carolina Utilities Commission in this cause dated the 22nd day of April 1955, by ruling that same does not contravene the decision of the Supreme Court of North Carolina in the case of FOX *v.* UTILITIES COMMISSION, 239 N.C. 253, and does not retain in the North Carolina Utilities Commission any grace or discretion as to the general right of Youngblood Truck Lines, Inc., to interchange freight with Helms Motor Express, Inc. as a matter of law by merely reserving to said body the general supervisory powers vested in it by the North Carolina Truck Act over all motor freight operations to assure that said operations are not contrary to public interest.

"(2) Except as herein modified and interpreted the Order of the North Carolina Utilities Commission in this cause dated the 22nd day of April 1955 be, and is hereby affirmed.

"(3) Except as hereinabove set forth all objections and exceptions of the Applicants and Protestants are overruled and denied."

From the foregoing judgment the protestants appealed to this Court.

*Allen & Hipp, Bunn & Bunn, and J. Ruffin Bailey for appellants.*
*Williams & Williams for appellee.*

JOHNSON, J.   This appeal derives from the ruling of the North Carolina Utilities Commission on protestants' motion to dismiss the petition

for want of jurisdiction of the subject matter. The motion was grounded on the contention that the petitioner is not entitled to the relief sought unless it is made to appear that Helms Motor Express, Inc., the carrier with whom the petitioner seeks authority to interchange freight, desires to enter into a freight interchange arrangement with the petitioner. The motion was allowed and the proceeding was dismissed on the ground that the following jurisdictional defects were disclosed by the pleadings and the record: (1) that Helms Motor Express, Inc. is not a petitioning party to the proceeding, and (2) the petitioner does not allege that Helms Motor Express, Inc. has made, or is desirous of making, an interchange agreement with the petitioner. Thus the proceeding was not heard on its merits. This being so, the scope of decision before the Commission was limited to a consideration of facts bearing on the question of jurisdiction as disclosed by the record and the pleadings. Therefore, any facts found by the Commission outside the record and pleadings were irrelevant to the Commission's inquiry and unnecessary to its decision.

While the order entered by the Commission contains a well-reasoned discussion of the legal principles applied by it in reaching decision, nevertheless it appears that the order also contains findings deduced from sources outside the record and pleadings and which are not germane to decision. The following findings are subject to challenge in this respect and will be treated as surplusage:

1. "The Commission has judicial knowledge of the fact that irregular route carriers, although not regulated by the Commission prior to the enactment of the Truck Act, in many instances prior to January 1, 1947, did interchange freight with other carriers, both regular and irregular. It likewise has judicial knowledge of the fact that all such interchange arrangements were by agreements entered into by the carriers involved."

2. ". . . that prior to January 1, 1947, all interchange arrangements between irregular route carriers and other carriers were by virtue of an interchange agreement entered into between the carriers making such interchange."

When the case reached the Superior Court on appeal, the scope of decision there was limited, no less than before the Commission, to a consideration of factors bearing on the question of jurisdiction as disclosed by the record and the pleadings. And the Superior Court was without authority to rule on matters affecting the merits of the proceeding. "It is well established that upon a motion to dismiss an action for want of jurisdiction of the subject matter thereof, matters affecting the merits of the action cannot be considered." 17 Am. Jur., Dismissal

and Discontinuance, Sec. 48; *Thacker v. Hubard & Appleby,* 122 Va. 379, 94 S.E. 929, 21 A.L.R. 414.

However, the presiding Judge in reviewing the decision of the Commission appears to have gone further and considered and dealt with matters relating to the merits of the proceeding. For example:

1. The statement that the court is of the opinion that the order entered by the Commission "does not, as contended by the applicant, retain in the North Carolina Utilities Commission any discretion or grace as to Applicant's rights to interchange traffic with HELMS MOTOR EXPRESS, INC. if it is able to effect an interchange agreement with said carrier."

2. The statement that Youngblood Truck Lines, Inc. "has the right if it can do so to re-establish an interchange relationship with said Helms Motor Express, Inc., and upon establishing such a relationship may put same into effect by filing the written terms of said interchange agreement with the North Carolina Utilities Commission and that the only power obtained by the North Carolina Utilities Commission in said Order is the regulatory power of assuring that all of the terms of said agreement are to the public interest just as they would be in the regulation or tariffs, schedules, operations, etc."

In making the foregoing conclusions the court was dealing with the merits of the proceeding, based in each instance on a state of facts not disclosed by the record. The questions dealt with were beyond the scope of review. They were hypothetical questions. The conclusions, and others of like import, along with the adjudications based thereon, should be eliminated. To that end, it is directed that the judgment of the Superior Court be modified so as to eliminate therefrom all conclusions and adjudications relating to matters affecting the merits of the proceeding, so that the judgment as modified shall decree that the petitioner's exceptions be overruled and that the order of the Commission be affirmed, subject to the modifications herein directed.

It is not perceived that the order of the Commission when so modified will contravene the decision of this Court in *Utilities Commission v. Fox,* 239 N.C. 253, 79 S.E. 2d 391. The order of the Commission aptly points out the factors which distinguish the instant case from the *Fox case.*

We have not overlooked the fact that the protestants have brought here on this appeal only a general exception to the judgment. *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223. See also *Worsley v. Rendering Co.,* 239 N.C. 547, 80 S.E. 2d 467; *Stewart v. Duncan,* 239 N.C. 640, 80 S.E. 2d 764; *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488. Nevertheless, the general exception presents the question whether errors of law prejudicial to the protestants appear upon the face of the record.

*Dellinger v. Bollinger,* 242 N.C. 696, 89 S.E. 2d 592; *Bond v. Bond,* 235 N.C. 754, 71 S.E. 2d 53.

The errors pointed out appear on the face of the record.

Conceding, *arguendo,* that the order entered by the Commission dismissing the proceeding contains, in addition to the findings ordered stricken, other findings or conclusions which reach beyond the scope of decision and deal with matters which are irrelevant, even so, our examination of the record leaves the impression that any such erroneous findings or conclusions are not prejudicial to the protestants, appellants.

Modified and affirmed.