STATE OF NORTH CAROLINA, EX REL. NORTH CAROLINA UTILITIES COMMISSION, v. YOUNGBLOOD TRUCK LINES, INC., ET AL.

(Filed 30 June, 1958.)

1. Carriers § 2—

   The basic distinction between a regular route common carrier and an irregular route common carrier is that the former is a carrier with scheduled operations over a restricted and defined route while the latter is a carrier with unscheduled operations within a designated territory but wholly unrestricted as to route.

2. Same—

   An irregular route common carrier has no legal right to compel a regular route carrier to interchange intrastate freight, but such inter-

change of freight between them must be based on an agreement, and in the absence of such agreement voluntarily made by the carriers and submitted by them to the Utilities Commission, the Commission has no jurisdiction of the subject matter.

**3. Same—**

Where joint petition of an irregular route truck carrier and a regular route truck carrier for permission to interchange freight is denied except as to points of pickup and delivery not on the regular route of any other carrier, and only one of the petitioning carriers appeals from judgment of the Superior Court affirming the order of the Utilities Commission, the nonappealing carrier is bound by the decision, and therefore the decision must be affirmed on appeal of the other carrier, since it could not be given authority to interchange freight without violating the provisions of the order as to the nonappealing carrier.

APPEAL by Youngblood Truck Lines, Inc., from *Moore (Dan K.), J.,* November 15, 1957, Schedule B, Civil Term, of MECKLENBURG.

Proceeding before the North Carolina Utilities Commission commenced June 4, 1956, by joint petition of Youngblood Truck Lines, Inc., and Colonial Motor Freight Line, Inc., filed "as provided in Revised Rule 44 of the Rules of the North Carolina Utilities Commission."

Petitioners attached to their petition a copy of their agreement to interchange at Charlotte and Winston-Salem, North Carolina, freight having origin, destination and entire transportation within North Carolina, with provisions for joint rates and division of revenue. They alleged that the proposed interchanges were in the public interest, providing better service to shippers, and prayed that the Commission approve their interchange agreement.

The matter came on for hearing on September 20, 1956, upon said petition and answers filed in behalf of seven protesting regular route common carriers.

At said hearing, the Commission permitted petitioners to amend their original petition by adding two new paragraphs. In this amendment, petitioners alleged, in substance, that on and prior to January 1, 1947, Youngblood, at points within its franchise, regularly and freely, as expediency and service demanded, interchanged intrastate freight with Colonial, and that such free interchange continued until 1952 when the Commission promulgated original Rule 44 and ordered petitioners to cease and desist. Also, the Commission permitted petitioners to add to their original prayer for relief the following: "That if necessary and proper the certificate or franchise of Youngblood Truck Lines be amended to permit a continuance of free interchange which existed prior to the inception of the Truck Act."

After consideration of the evidence offered at said hearing, the Com-

mission filed its order, which sets forth its findings of fact, conclusions of law, general conclusions, and thereafter its specific order, all of which comprise 44 pages of the record.

The Commission's specific order provides:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND CON-CLUDED by the Commission, as follows:

"(1) That Youngblood and Colonial be, and they are hereby allowed to interchange freight in intrastate commerce by establishing through routes and joint rates as to the regular route operations of Colonial, provided the traffic or freight interchanged between Youngblood and the regular route operations of Colonial originates at or is destined to points in North Carolina not on any route of a regular route carrier of general commodities; provided, further, that a copy of such interchange agreement with respect to these points is filed with the Commission.

"(2) That Youngblood and Colonial have no right to interchange freight because of any operational practices during the qualifying or critical period of the Grandfather Clause, such rights as well as their nature, extent and frequency having never been brought to the attention of the Commission until the petition of Youngblood filed on January 31, 1955, and long after the effective date of the Truck Act of 1947, or after October 1, 1947.

"(3) That Youngblood and Colonial having not asserted their rights under the Grandfather Clause within the time required by that clause, no rights of interchange can now be claimed under the Grandfather Clause.

"(4) That as to the irregular route operations of both Youngblood and Colonial, no authority of law exists which would permit these two common carriers of freight by motor vehicle to establish through routes and joint rates and interchange freight in intrastate commerce.

"(5) That as to the regular route operations of Colonial and the irregular route operations of Youngblood, there exists no need for such interchange of freight in intrastate commerce; such interchange would not be in the interest of the public, and the Commission does not approve such interchange except insofar as stated in paragraph (1) hereof.

"(6) That Youngblood having participated in the hearing in which Rule 44, as Revised, was established and not having appealed from the establishment of such Rule, it is estopped from now contesting the validity of Rule 44, as Revised.

"(7) That the Commission for good cause shown and in its discretion does not approve the interchange of freight in intrastate commerce sought in this proceeding.

"(8) That this petition, or application, on the part of both Youngblood and Colonial be, and the same is hereby dismissed."

Youngblood appealed from the Commission's order to the superior court, challenging many findings and statements therein and provisions of its specific order by 83 exceptions.

Colonial did not except to or appeal from the Commission's order.

After recitals the judgment of Judge Moore was as follows: "IT IS ORDERED, ADJUDGED AND DECREED that the exceptions of Youngblood Truck Lines, Inc., and each and every one of them, be, and the same are hereby overruled, and Order of the North Carolina Utilities Commission dated the 20th day of March, 1957, be, and the same is hereby affirmed."

Youngblood, but not Colonial, excepted and appealed. In addition to its exception to the judgment, Youngblood excepted separately to the action of the court in overruling each of the 83 exceptions it had filed to the Commission's order. On appeal, Youngblood sets forth 92 assignments of error.

Additional facts, relevant to this appeal, are stated in the opinion.

*Williams & Williams for Youngblood Truck Lines, Inc., appellant.*

*Attorney General Patton and Assistant Attorney General Burns for the North Carolina Utilities Commission.*

*J. Ruffin Bailey for Fredrickson Motor Express Corp., Miller Motor Express, Inc., and Helms Motor Express, Inc.*

*Bunn & Bunn for Overnite Transportation Company and Thurston Motor Lines, Inc.*

*Allen & Hipp for Great Southern Trucking Company and Bottoms-Fiske Truck Lines, Inc.*

BOBBITT, J. The franchises of both Youngblood and Colonial were issued pursuant to Sec. 7, Ch. 1008, Session Laws of 1947, codified as G.S. 62-121.11, the so-called Grandfather Clause of the Truck Act of 1947.

Under its franchise, Youngblood is an irregular route common carrier, with headquarters at Fletcher, North Carolina, having authority to transport general commodities, except those requiring special equipment, over irregular routes on and west of U. S. Highway No. 1.

Under its franchise, Colonial is both a regular route common carrier and an irregular route common carrier, with headquarters at High Point, North Carolina. As a regular route common carrier, it is authorized to transport general commodities, except those requiring special equipment, over a defined route, between Winston-Salem and Fayetteville. As an irregular route common carrier it has like authority over irregular routes in defined areas both east and west of U. S.

Highway No. 1. Its irregular route territory and that of Youngblood overlap in a large area, including what is generally regarded the Piedmont section of North Carolina.

Petitioners alleged that Colonial was a duly franchised "regular route common carrier of motor freight in interstate and intrastate commerce." They made no reference in their petition to Colonial's status as an irregular route common carrier. Even so, their petition prayed approval of an agreement providing for interchange between Youngblood and Colonial without limitation or restriction.

The basic distinction between a regular route common carrier and an irregular route common carrier is that the former is a scheduled operation over a restricted and defined route while the latter is an unscheduled operation within a designated territory but wholly unrestricted as to route. The rules and regulations of the Commission define these terms in detail. See *Utilities Commission v. Truck Lines,* 243 N.C. 442, 91 S.E. 2d 212.

Regular route common carriers and irregular route common carriers complement each other in serving the public interest. The service rendered by both is required to provide transportation service by truck to all shippers. If the petition were allowed, the result would be as follows: Youngblood and Colonial, in respect of irregular route operations, could provide transportation of intrastate freight by unscheduled operations and without restriction as to route over the greater part of North Carolina. Too, in handling by interchange with a regular route common carrier freight originating at or destined to points outside its territory, Youngblood could pick up and deliver shipments on the route of another regular route common carrier. Thus, if the petition were allowed, petitioners would be permitted to handle selectively shipments now available to a regular route common carrier in its required scheduled operations along its restricted route. In view of the basis of decision, stated below, we make no decision as to whether the evidence supports the Commission's finding of fact and conclusion that it would not be in the public interest to grant the authority sought by petitioners.

Original Rule 44, effective July 1, 1951, is quoted in full in *Utilities Com. v. Fox,* 236 N.C. 553, 73 S.E. 2d 464.

Revised Rule 44, promulgated April 30, 1953, is quoted in full in *Utilities Com. v. Truck Lines, supra.*

The ultimate question presented on second appeal in *Utilities Com. v. Fox,* 239 N.C. 253, 79 S.E. 2d 391, was whether Fox, an irregular route common carrier, could continue to interchange interstate freight as it had done prior to January 1, 1947. Apparently, the question as

to whether Fox had asserted rights based on the Grandfather Clause *in apt time* was not raised.

Sec. 24(2) of the Truck Act of 1947, codified as G.S. 62-121.28(2), in pertinent part, provides: "(2) That except under special conditions and for good cause shown every common carrier by motor vehicle authorized to transport general commodities over regular routes shall establish reasonable through routes and joint rates, charges, and classifications with other such common carriers by motor vehicle, *and, with the approval of the Commission, may do so with irregular route common carriers by motor vehicle,* common carriers by railroad and/or express and/or water." (Our italics)

It is noted that Revised Rule 44, in substantial part, is in accord with Sec. 24(2) of the Truck Act of 1947. See also Sec. 25 of the Truck Act of 1947, codified as G.S. 62-121.29.

In *Utilities Com. v. Truck Lines, supra,* Youngblood filed a petition for authority to interchange freight with Helms Motor Express, Inc., a regular route common carrier. Allowing protestants' motion, the Commission dismissed the proceeding for want of jurisdiction of the subject matter on the ground that the following jurisdictional defects were disclosed by the pleadings and the record: (1) that Helms Motor Express, Inc., was not a petitioning party to the proceeding, and (2) that petitioner did not allege that Helms Motor Express, Inc., had made, or was desirous of making, an interchange agreement with the petitioner.

This Court affirmed the judgment of the superior court insofar as said judgment affirmed the Commission's order dismissing the proceeding for want of jurisdiction of the subject matter.

As indicated, the original petition was based squarely on Revised Rule 44; and therein the petitioners sought a determination that the proposed interchanges of intrastate traffic and joint rates would be in the public interest. The purport of their amendment, allowed and made at the hearing on September 20, 1956, is that, independent of the Commission's finding as to the public interest, they were entitled as of right, under the Grandfather Clause, to do what their original petition prayed that the Commission allow them to do.

On this appeal, for the reason stated below, it is unnecessary to determine whether Youngblood and Colonial, or either of them, had interchange rights under the Grandfather Clause as asserted in their amendment, or the nature and extent of such rights, if any; nor is it necessary to determine whether by delay in asserting such rights, if any, or by notice of and acquiescence in Revised Rule 44, they, or either of them, are precluded from asserting such rights.

We recognize *Utilities Com. v. Truck Lines, supra,* as authority for

these propositions: (1) an irregular route common carrier has no legal right to compel a regular route common carrier to interchange intrastate freight; (2) interchange between such carriers must be based on an agreement; and (3) in the absence of such interchange agreement, voluntarily made by such carriers and submitted by them to the Commission, the Commission has no jurisdiction of the subject matter.

We are confronted by this situation. The joint petition of Youngblood and Colonial, based on their agreement, was sufficient to invoke the jurisdiction of the Commission. The Commission did not approve the interchange of freight in intrastate commerce sought by petitioners. It dismissed their petition. However, the Commission, under Revised Rule 44(2), allowed Youngblood and Colonial to interchange freight in intrastate commerce to the extent set forth in paragraph (1) of the Commission's order, quoted in the statement of facts.

Colonial, which did not except or appeal, is bound by the Commission's order. The proceeding involves only rights of interchange between Youngblood and Colonial. Such rights are interdependent and must stand or fall together. Since Colonial cannot interchange with Youngblood except to the extent allowed in paragraph (1) of the Commission's order, it follows that Youngblood cannot interchange with Colonial otherwise than to this extent.

On the basis stated in the preceding paragraph, the judgment of *Judge Moore* is affirmed.

Neither the order of the Commission nor the judgment of the superior court, in respects challenged by Youngblood, may be considered as precluding Youngblood from asserting the positions taken by it on this appeal in other proceedings, if any, in which these questions arise.

Affirmed.